### A99A0285. THE STATE v. BURNS.
(520 SE2d 39)

RUFFIN, Judge.

Michael Burns was charged with trafficking in cocaine and possession of marijuana after a traffic stop resulted in the discovery of contraband. The trial court granted Burns's motion to suppress evidence resulting from the stop, and the State appeals. We affirm.

In reviewing a motion to suppress, the evidence is construed most favorably to uphold the trial court's findings and judgment, and the court's findings on disputed facts and credibility will be adopted unless they are clearly erroneous. *Redd v. State*, 229 Ga. App. 364, 365 (494 SE2d 31) (1997). However, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

In this case, the relevant facts are essentially undisputed. Deputy Scott Mauro testified that, on March 19, 1998, he saw an older model yellow or tan Monte Carlo driving on Washington Road. There appeared to be two occupants in the car, although the windows were

tinted. Mauro testified that a "BOLO," or "be on the lookout," alert had been issued for an "older, yellow in color Monte Carlo driven by or occupied by two suspects, one unknown and one . . . believed to be a white man," that had been involved in a purse snatching three days earlier at a Lowe's store about two miles away. Mauro stopped the automobile because it matched the description in the BOLO alert and ran criminal checks on the two occupants, Burns and Tremayne Clark, who were both black males. These checks revealed no outstanding warrants.

Deputy Jason Redman, a narcotics officer with the canine unit, testified that he arrived at the scene after Mauro had stopped the car. Redman testified that he began asking questions to Burns and Clark and became suspicious when they gave inconsistent statements and appeared evasive. While waiting for the results of the criminal background checks, Redman had his drug dog perform a free air sniff around the outside of the car, and the dog gave a positive response near the front passenger door. Redman opened the passenger door, and the dog alerted on an air conditioning vent. Redman removed the vent cover and found a bag of crack cocaine.

Burns moved to suppress evidence resulting from the search, arguing that the police did not have articulable suspicion to stop the car. The trial court granted the motion to suppress, and the State appeals.

In determining the validity of an investigative stop, our Supreme Court has stated that

> [a]lthough an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, [1880,] 20 LE2d 889) (1968). The U. S. Supreme Court recognized the difficulty in defining "the elusive concept of what cause is sufficient to authorize police to stop a person," and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, [695,] 66 LE2d 621) (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of [the Supreme Court's] Fourth Amendment jurisprudence." *Terry v. Ohio*, supra at 21, n. 18.

(Citations omitted.) *Vansant*, supra at 320 (2).

In *Vansant*, relied on by Burns, an individual telephoned the police and said that he had seen the defendant, obviously intoxicated, get into a white GM van, back into a pickup truck, and drive away without stopping. This individual gave the police his name and location, a description of the incident, the name of the defendant, a description of the van by color and manufacturer, and the direction in which the van was headed. Id. at 319. A police officer saw a white van about a mile from the scene of the incident and followed it for a mile before stopping it. This officer knew only that he was on the lookout for a white van driven by a white male named John Vansant and testified that he would have stopped any white van. It was about 1:15 a.m. at the time of the stop, there were few vehicles on the road, and this was the only white van the officer saw. Id. at 319-321. Nevertheless, the Supreme Court held that the officer did not have a

> particularized basis for suspecting the driver of this particular white van of criminal activity. He did not have a particularized description of the vehicle; he did not know the direction in which the vehicle had left the scene of the purported hit-and-run; he had not observed criminal activity on the part of the person stopped; he had no knowledge or suspicion that the vehicle had been involved in other similar criminal behavior. The officer's lack of specific information resulted in an unreasonable governmental intrusion.

Id. at 321.

The State argues that *Vansant* is distinguishable because the officer in this case was working from a more particularized description of the automobile: i.e., an older model, yellow Monte Carlo with two occupants, one of whom was a white male. The State argues that *Thomason v. State*, 268 Ga. 298 (486 SE2d 861) (1997) is the more appropriate precedent. In *Thomason*, Jerry Self called police on his cellular phone to say that he saw an unfamiliar Oldsmobile Cutlass parked in his driveway. Two police officers drove to Self's house to investigate. When they were about 100 yards from the house, they saw a light brown 1978 or 1979 Oldsmobile Cutlass, with a lighter brown top, approaching them from the direction of the house. It was raining heavily, and they noticed that the driver was a white male with brown curly hair wearing a black baseball cap. The officers proceeded to Self's house, where they found Self lying dead on the ground from gunshot wounds. It appeared that the house had been burglarized. Id. at 299. Local police were alerted to be on the lookout for a brown 1978 or 1979 Oldsmobile Cutlass with a lighter brown top driven by a white male. Shortly thereafter, a vehicle and driver

matching that description were seen leaving a convenience store in nearby Calhoun. A police officer stopped the vehicle and patted down the driver, who was soaking wet even though it had just started raining in Calhoun. The driver's shirt appeared to have fresh blood on it, and, after consent to a vehicular search was given, bloodstained currency was found in the car. Id. at 299-300.

The Supreme Court held that the officer had reasonable suspicion for the initial stop. The Court noted that the description of the automobile and driver was much more detailed than in *Vansant*, including "the color of both the car and its top, the manufacturer, model, and model year of the car, and the driver's gender and race." *Thomason*, supra at 301. This "specific and articulable information" was enough to give the officer "reasonable suspicion that the car and its driver were the subjects of the lookout request." Id. at 301-302.

The State's reliance on *Thomason* is misplaced, as the circumstances surrounding the stops in *Thomason* and in this case are quite different. For one thing, the description of the car in *Thomason* (1978 or 1979 brown Oldsmobile Cutlass with lighter brown top) was much more detailed and distinguishing than the description in this case (older model yellow Monte Carlo), thus making it more likely that a car matching the description would in fact be the car police were looking for. More fundamentally, the lookout request in *Thomason* was still fresh, while the lookout request in this case was issued three days before the stop. As the Supreme Court noted in *Thomason*, the relevant question is whether the officer has a reasonable suspicion that the car and driver in question are in fact the subjects of the lookout request. Id. If an alert is issued immediately after an incident, as in *Thomason*, a general description of the vehicle (e.g., by color, model, and year) may suffice to justify a stop, as it is more likely that a vehicle matching the general description, in the vicinity and near the time of the incident, is in fact the vehicle that the police are looking for. This is especially true where, as in *Thomason*, the vehicle itself is rather uncommon (a 13- or 14-year-old Cutlass with distinguishing colors). Where a lookout alert is several days old, however, it is much less likely that a car matching a general description is in fact the car that is being sought. In this case, we cannot say that the mere fact that an older model yellow Monte Carlo was seen three days after the issuance of an alert was sufficient to raise a reasonable suspicion that it was the same car involved in a purse snatching three days earlier at a location two miles away.

Since the police did not have reasonable suspicion to stop Burns's vehicle in the first place, the free air search by the drug dog did not provide probable cause to search the vehicle. See *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996). Accordingly, the trial court did not err in granting the motion to suppress.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED JUNE 25, 1999.

■

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellant.
*Raymond J. Doumar*, for appellee.