A00A1229. CASEY v. THE STATE.
A00A1461. JONES v. THE STATE.
(542 SE2d 531)

BARNES, Judge.

In a joint trial, a jury found Anthony Casey and Kevin Jones guilty of aggravated assault and possession of a firearm in commission of a felony. Casey was also convicted of possession of a firearm by a convicted felon. Casey and Jones appeal, both challenging the sufficiency of evidence and the admissibility of certain evidence. Their separate appeals are consolidated for disposition in a single opinion. Having determined that the evidence sufficiently supports the verdicts and that no reversible error occurred, we affirm.

On appeal, we view the evidence in a light most favorable to the verdict, and an appellant no longer enjoys a presumption of innocence. *Patterson v. State*, 225 Ga. App. 515 (484 SE2d 317) (1997). This court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. *Patterson*, supra, 225 Ga. App. 515. Conflicts in the evidence are for the jury to resolve. Id.

The record shows that on March 15, 1998, Casey, Jones, Joseph Williams, Gabriel Wallace, and several others attended a basketball game at the Georgia Dome. Afterward, Casey, Jones, Williams, and Wallace got into a Ford Thunderbird and took Wallace to his home in Cobb County. Casey, Jones, and Williams left Wallace's apartment at approximately 7:45 p.m. Wallace testified that Jones, who was wear-

ing a brown leather coat, was driving; Casey, who was wearing a blue, black, and white jacket, was seated in the backseat; and Williams was seated in the front passenger seat.

Approximately 30 minutes later, a motorist found Williams's body on an Interstate 285 exit ramp that connects to I-85 North in south Fulton County. He had died of a gunshot wound to the back of the left side of his head. The forensic pathologist who examined the body testified that the wound would have bled significantly.

At approximately 11:52 that evening, a Tennessee state trooper stopped Casey and Jones in Knoxville for speeding. Hours later, at 4:10 a.m. on March 16, Police Officer Ponichtera of Dayton, Ohio, stopped the men for traveling 76 mph in a 55-mph zone.

The officer asked Jones, who had been driving the car, for his driver's license and proof of insurance and asked Casey, who was seated in the front passenger seat, for his name, date of birth, and Social Security number. The officer then asked Jones "some general questions about where they were coming from, where they were going, that sort of thing." Jones responded that they had left Alabama at 11:00 the previous night and were headed to Detroit and that "Jerry" owned the car. When the officer asked Jones for his consent to search the car, Jones refused. When the officer asked Casey about their travel itinerary, Casey stated that they had left Alabama at 11:00 the previous morning, then added that they had stopped in Atlanta. Deciding that Jones should post bond for the citation, the officer put Jones in the backseat of his patrol car for transport to the county jail.

Lieutenant Welsh, who arrived as backup, went to the Ford Thunderbird where Casey remained seated and instructed him to sit in the backseat of his cruiser. When Lt. Welsh opened Casey's car door, he saw "a large quantity of blood on the rocker panel and the seat he was sitting in." The officer testified that he became suspicious and that after placing Casey in the back passenger seat of his patrol car, he asked Casey "a series of questions." Casey responded that they had been to Alabama, that they had left at approximately 11:00 the previous morning, and that they were headed to Detroit. When the officer asked him about the blood, Casey stated that the blood must have been in the car when they borrowed it in Detroit. The officer testified that he observed that Casey would not look at him when responding and that he was wringing his hands and wiping his palms on his pants.

After talking to Casey, Lt. Welsh walked to Officer Ponichtera's patrol car, leaned into it, and asked similar questions to Jones, who was seated in the back of the car. Jones told the lieutenant that they had been to Alabama, that they were going to Detroit, and that they had borrowed the car from "Jerry." In response to the officer's ques-

tion concerning the blood in the car, Jones asked, "What blood?" Lt. Welsh testified that Jones would not look at him but instead would look out the side windows. Officer Ponichtera transported Jones to post bond.

Meanwhile, Lt. Welsh requested a canine unit with a dog trained to alert to the odor of narcotics. The canine unit arrived at the scene at the same time as Officer Ponichtera, who was taking Jones back to the Ford Thunderbird after he had posted bond. When the drug dog alerted, police drove the car to a safer, well-lit area to search it. The police also transported Casey and Jones there. During the search, officers found a marijuana pipe, the remainders of marijuana cigars, a brown leather jacket, a blue and black jacket, and a gun.[1] One of the searching officers saw a "large quantity of what appeared to be blood, tissue." He stated that the ceiling "looked like somebody had been — like blood had been sprayed." They also saw what appeared to be blood and body tissue on the brown leather jacket. At this point, Lt. Welsh halted the warrantless search, placed the items back in the car, called the homicide squad, and sought a search warrant.

After obtaining a search warrant for the vehicle, the officers found a bloodstained floor mat in the front passenger area. Blood samples were taken from the car.

An expert in blood spatter analysis, who found blood throughout the front passenger area of the car and in the area of the right arm of the driver, testified that based upon his examination of the blood pattern, the victim was sitting in the passenger's seat of the vehicle when he was shot. He determined that a high-velocity spatter of blood came back toward its source of energy, finding that point to be an area above the front passenger's seat. Reconstructing the crime scene, he concluded that the person wearing the blue and black jacket was situated such that the blood hit the upper front area of the jacket and that the person wearing the brown leather jacket was the driver because the bloodstains on it were consistent with someone holding a steering wheel. An expert in forensic serology identified blood on the right sleeve of the brown leather jacket and on the sleeves and front of the blue and black jacket. A DNA expert testified that the DNA from both jackets and from the molding of the Ford Thunderbird contained the deceased's DNA profile.

### Case No. A00A1229

1. Casey contends that the evidence, which was circumstantial, was insufficient to allow a rational trier of fact to find him guilty beyond a reasonable doubt as the perpetrator of the offenses or as a

---

[1] The gun was not found to be connected to the shooting of Williams.

party thereto. We disagree.

> Circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of every inference or hypothesis except that of the defendant's guilt. Questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb the finding, unless the verdict is unsupportable as a matter of law.

(Citations and punctuation omitted.) *Robinson v. State*, 203 Ga. App. 759, 760 (1) (417 SE2d 404) (1992). The jury's conclusion that Casey was guilty of aggravated assault and possession of a firearm in the commission of a felony cannot be said to be unsupportable as a matter of law. See OCGA § 16-2-20, which defines when a person is a party to a crime. Applying the standard of *Jackson v. Virginia*, supra, we hold that the evidence was sufficient.

2. Casey contends that the trial court erred in refusing to suppress his pretrial statements, urging that the statements were obtained in violation of his right to remain silent under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

But *Miranda* does not apply to a "general on-the-scene investigation." *Shy v. State*, 234 Ga. 816, 820 (1) (218 SE2d 599) (1975).

> So long as the interrogation is not aimed at obtaining information to establish a suspect's guilt but is instead aimed at determining the nature of the situation upon the arrival of the law enforcement officer on the scene, some initial inquiry may, under the circumstances, be permissible before *Miranda* warnings are given.

(Citations and punctuation omitted.) *Toth v. State*, 213 Ga. App. 247, 249 (2) (444 SE2d 159) (1994). Here, after Officer Ponichtera stopped the men for speeding, they remained seated in the Ford Thunderbird as each responded to the officer's questions concerning their travel. Casey and Jones were not in custody at that time; thus, no *Miranda* warnings were required. *Manchester v. State*, 226 Ga. App. 653, 655 (1) (487 SE2d 449) (1997). As this evidence was properly admitted, any error in admitting cumulative evidence regarding Casey's and Jones's subsequent statements made to Lt. Welsh while seated in the backseats of patrol cars was harmless. Both men denied knowing anything about the blood in the car when Lt. Welsh questioned them. The lieutenant was not then aware of any homicide; rather, the cir-

cumstances reveal that his questions were part of an initial on-the-scene investigation. The trial court did not err.

3. Casey contends the trial court erred in admitting the items seized from the vehicle, arguing they are the fruits of an illegal warrantless pretextual search.

(a) Because Jones was exceeding the posted speed limit, the initial stop was proper. See *Buffington v. State*, 229 Ga. App. 450, 451 (494 SE2d 272) (1997) (if the arresting officer witnessed the driver breaking even a relatively minor traffic law, a motion to suppress arguing that the stop was pretextual fails). Casey does not argue that he was unlawfully detained; rather, he argues that the officers conducted a warrantless search without an exception to the warrant requirement. The United States Supreme Court has held that exposure of personal effects located in a public place to a trained canine does not constitute a search within the meaning of the Fourth Amendment. *United States v. Place*, 462 U. S. 696, 707 (103 SC 2637, 77 LE2d 110) (1983); *O'Keefe v. State*, 189 Ga. App. 519, 525 (3) (376 SE2d 406) (1988) (officer's use of a trained canine's olfactory sense cannot convert a sniff of the air around the exterior of a car into an unreasonable search of the interior of the car). Here, the drug dog was in a place where he was authorized to be; the drug dog did not intrude into the interior of the car; and the airspace around the car is not an area protected by the Fourth Amendment. See id. Once the drug dog alerted to the car, the officer had probable cause to believe that contraband was contained somewhere therein, authorizing the warrantless search of the automobile. *Pennsylvania v. Labron*, 518 U. S. 938, 940 (116 SC 2485, 135 LE2d 1031) (1996) (per curiam); *United States v. Ross*, 456 U. S. 798, 809 (102 SC 2157, 72 LE2d 572) (1982); *Benton v. State*, 240 Ga. App. 243, 245-246 (2) (522 SE2d 726) (1999). Therefore, the trial court did not err in denying the motion to suppress the evidence found during the search.

(b) Casey further contends evidence of the marijuana pipe, the marijuana cigar remnants, and gun should have been suppressed, arguing that the items bore no connection to the crimes charged and only served to portray him and Jones as "bad men." But clearly the gun was relevant in proving the charge of possession of a firearm by a convicted felon against him. Further, where the same fact has been admitted in evidence before the jury, without objection, such admitted evidence renders harmless the admission of the same evidence over objection. *Cherry v. State*, 230 Ga. App. 443, 446 (4) (496 SE2d 764) (1998). The record shows that Wallace testified, without objection, that on the way to the game on March 15, 1998, he, Casey, Jones, and the deceased had been having "a great time . . . laughing, smok[ing] [marijuana], drink[ing] a few drinks." Any alleged error was harmless.

4. Casey contends that the trial court erred in refusing to suppress evidence seized pursuant to the search with the warrant, asserting that the evidence was derivative of and tainted by the unlawful warrantless search and constituted fruit of the poisonous tree.

Relying on *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963), Casey states that the exclusionary rule prohibits the admissibility of evidence obtained in violation of the Fourth Amendment. But in Division 3, supra, we determined that the search of the Ford Thunderbird did not violate the Fourth Amendment.

Casey further argues that the search warrant was not based upon independent probable cause but was based upon his statements obtained in violation of *Miranda*. He contends that therefore the items of evidence retrieved from the search were obtained as a result of his statements and were "fruits of the poisonous tree," which should have been suppressed. But even if this is so, this contention is without merit. The exclusionary rule does not apply to the "fruits" of a voluntary statement obtained after a violation of *Miranda*'s procedural rules but not a violation of the constitution. *Wilson v. Zant*, 249 Ga. 373, 376-378 (1) (290 SE2d 442) (1982), overruled on other grounds, *Morgan v. State*, 267 Ga. 203, 204-205 (2) (476 SE2d 747) (1996); *Cotton v. State*, 237 Ga. App. 18, 20 (513 SE2d 763) (1999).

*Case No. A00A1461*

5. Jones contends that the evidence, which was circumstantial, was insufficient to allow a rational trier of fact to find them guilty beyond a reasonable doubt as the perpetrators of the offenses or a party to the offense. For the reasons discussed in Division 1, supra, this contention is without merit. *Robinson v. State*, supra, 203 Ga. App. at 760; OCGA § 16-2-20; *Jackson v. Virginia*, supra.

6. Jones contends that the trial court erred in failing to suppress the statements he made while seated in the back of the patrol car because the police questioned him in violation of *Miranda*. For the reasons discussed in Division 2, supra, this contention is without merit.

7. Jones contends that the trial court erred in refusing to suppress the fruits of what he claims was an illegal warrantless search of the vehicle. For the reasons discussed in Division 3, supra, this contention is without merit.

8. Jones contends that the trial court erred in refusing to suppress evidence seized pursuant to the search with a warrant, urging that such evidence was derivative of and tainted by the unlawful warrantless search and constituted fruit of the poisonous tree. For the reasons discussed in Division 4, supra, this contention is without

merit.

*Judgments affirmed. Blackburn, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 14, 2000.

*Tony L. Axam*, for appellant (case no. A00A1229).

*Herbert Adams, Jr., Gwendolyn Johnson*, for appellant (case no. A00A1461).

*Paul L. Howard, Jr.*, District Attorney, *Alvera A. Wheeler*, Assistant District Attorney, for appellee.