A01A2258. WILLIAMS v. THE STATE.
(561 SE2d 149)

ANDREWS, Presiding Judge.

Christopher Williams, convicted of armed robbery, appeals from the trial court's denial of his motion for new trial.

1. Williams' second enumeration challenges the sufficiency of the evidence and is addressed first.

> When reviewing a conviction, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). Any inconsistencies in the victims' [and witnesses'] testimony . . . go to the weight and credibility of the witnesses' testimony; such issues are for the jury to weigh. *Sherman v. State*, 225 Ga. App. 869 (485 SE2d 557) (1997); *Jones v. State*, 220 Ga. App. 236 (469 SE2d 379) (1996). "This Court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses." (Citation and punctuation omitted.) *Kapua v. State*, 228 Ga. App. 193, 195 (491 SE2d 387) (1997).

*Taylor v. State*, 232 Ga. App. 383, 384-385 (501 SE2d 875) (1998).

Viewed with all inferences in favor of the verdict, the evidence was that, around 9:30 to 10:00 p.m. on September 10, 1999, Ali Noorani, the owner of the S & N Liquor Store on Lawrenceville Highway, was restocking his store since business was slow when he saw a man, later identified as Williams, enter. Williams, wearing blue jeans and a black t-shirt with a Church's Chicken logo on it, asked for some lottery slips and filled them out, but then left without playing the lottery. Shortly thereafter, a second man, later identified as Calvin Ben-

ton,[1] entered wearing a white t-shirt, baggy shorts with his green plaid underwear showing, and a mask partially covering his head. Benton went to Ramos, Noorani's stock clerk, and brandished a gun. Noorani opened the cash drawer, and Benton reached in and grabbed money, dropping some on the floor. During this time, Noorani realized that Williams had reentered the store and come behind the counter, a restricted area. Both men were trying to get money from the first cash drawer and a second one which Noorani opened upon seeing Williams come back into the store. A customer arrived outside, and the two men ran in different directions, taking over $500. The entire incident was captured on the store's videocamera.

Around 10:30 p.m., Cain was in her nearby residence when she heard Benton knock at her door. He was wearing very baggy shorts with green plaid underwear and a white t-shirt and wanted to use her phone. Cain dialed the number which Benton provided her and asked for Nisha, as he had directed. She gave the phone to Benton who spoke to Nisha. Because Benton could not give accurate directions to Cain's home, Cain gave Nisha directions. After Benton left, Cain heard a police helicopter circling and called a neighbor who told her about the robbery. Cain gave a police officer her information, including the phone number she had called and the name "Nisha." Later that evening, Officer Gaddis found a white t-shirt in Cain's neighbor's yard.

Benisha Price had lived next door to Williams' child's mother and had also known Benton several years. She recalled occasions when both Benton and Williams were at her apartment at the same time. On September 10, Price was visited by Ellis around 10:30 p.m. Ellis was driving her mother's car, a purple Dodge Neon. Price was called by Benton and asked to come and get him. She and Ellis left in the purple Neon and went to Lawrenceville Highway. Although they did not find Benton, Price saw Williams at a gas station near the S & N and they stopped and picked him up.

Numerous DeKalb police officers responded to the robbery report, including K-9 Officer Davis and his dog. Although the dog picked up a track, he lost it. Officer Davis parked across from S & N to do paperwork after becoming aware that someone in a Neon was coming to pick up one of the perpetrators. Officer Davis saw a shadow across Lawrenceville Highway, and a man came from behind some shrubbery and looked up and down the highway and then went back behind a fence. The man was wearing jeans and a t-shirt with writing from a chicken restaurant on it. Within a few minutes, a purple Dodge Neon pulled up, stopped, and the man came out, looked

---

[1] Pursuant to Benton's motion, his trial was severed from Williams'.

both ways, and ran over to the Neon. Officer Davis stopped the Neon and found Ellis driving, Price in the front passenger seat, and Williams in the back seat. Price told officers that she had been called by Williams to come pick him up, although at trial she testified Benton called her.

Benton, wearing no shirt, was later arrested leaving a taxi off of I-285 and Lawrenceville Highway. Benton had $546 in cash and Williams had $19, including $7.50 in quarters, when taken into custody.

Williams was taken to the police station, advised of his *Miranda* rights, and gave three varying statements. Initially, he said a friend dropped him off at Lawrenceville Highway and North Druid Hills Road; he walked to the S & N and bought a drink. He then left to use a pay phone outside. Upon returning inside, he found people running all around, and he picked up some money that had been dropped. Then, Williams acknowledged that he had seen a gunman in the store and had picked up some money. Finally, Williams said he had met Benton across the street from the store and agreed to "watch his back" while Benton robbed the store. He also admitted he had fled after picking up some money.

At trial, Williams testified that, after getting off work at Church's Chicken, he and a friend drove around a while drinking beer and he had been dropped off, walked to the store, bought a drink, used the pay phone to arrange a ride, and went back inside the store. He saw the robbery in progress, ducked behind the counter, and ran. He then got in the car with Ellis and Price. He denied being involved in the robbery or picking up any money.

The question of which version of events to believe was properly left to the jury. Upon review, we find the evidence legally sufficient to support Williams' conviction of armed robbery as a party to the crime. *Jackson v. Virginia*, supra; see *Igidi v. State*, 251 Ga. App. 581, 586 (4) (554 SE2d 773) (2001).

2. Williams contends, in his first enumeration, that the trial court erred in denying his motion to suppress his statements[2] because the stop of the Neon was unlawful under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).[3]

Although Williams filed a motion for a *Jackson v. Denno*[4] hearing below, as well as a motion to suppress his statements, he does not challenge the voluntariness of his statements here, only the legality

---

[2] Denial of the motion to suppress was also a ground for Williams' motion for new trial and was reconsidered by the trial court at that time.

[3] Although Williams argues here that the detention after the stop was also illegal, that ground was not included in his motion below and will not be considered here for the first time.

[4] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

of the stop. Compare *Lopez v. State*, 252 Ga. App. 681, 686 (2) (557 SE2d 1) (2001).

In determining the validity of a stop or search found valid by the trial court after a suppression hearing, we may also consider the evidence introduced at trial. *Johnson v. State*, 230 Ga. App. 535, 536 (1) (496 SE2d 785) (1998). " ' "[A] trial court's order on a motion to suppress will not be disturbed if there is any evidence to support it, and the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous." (Cit.)' [Cit.]" Id.

The majority of Williams' argument here is addressed to Officer Davis' credibility and hinges on this Court's reevaluation of it despite the trial court's finding Davis' testimony credible. This we cannot do because the finding by the trial court is not clearly erroneous. Compare *State v. Alexander*, 245 Ga. App. 666 (538 SE2d 550) (2000) (crediting testimony at odds with objective facts shown on videotape was clearly erroneous), with *Cunningham v. State*, 231 Ga. App. 420 (1) (498 SE2d 590) (1998) (good faith reliance by officer on information later found incorrect sufficient for articulable suspicion).

The facts set out in Division 1 evidence a rapidly evolving investigation, involving numerous officers, of an armed robbery involving two males, one wearing a shirt with a chicken logo on it. Whether Officer Davis received the information regarding the Neon from a sergeant while running his dog after a scent or overheard it in a radio dispatch, or both, such information gave him an articulable suspicion to investigate a Neon he saw stop on a five-lane road to pick up a man acting furtively in the area of the robbery and wearing a shirt matching the description of one of the robbers. *Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999); *Cunningham v. State*, supra; *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997) (articulable suspicion may be based on collective knowledge of law enforcement officials).

There was no error in denial of the motion to suppress and subsequent denial of the motion for new trial based upon it. *Hayes v. State*, 249 Ga. App. 857, 864 (5) (549 SE2d 813) (2001) (stop of car in area of recent shooting upheld). Neither *McSwain v. State*, 240 Ga. App. 60 (522 SE2d 553) (1999), nor *State v. Burns*, 238 Ga. App. 683 (520 SE2d 39) (1999), relied upon by Williams, persuades us otherwise. In *McSwain*, the only information the officer received was of "possible" drug activity, and in *Burns*, the lookout involved a purse snatching that had occurred three days prior to the stop.

3. Williams, through appellate counsel, contends that his trial counsel rendered ineffective assistance by failing to advise him of his right to remain silent; failing to call Michael Cooper as a witness; failing to establish the source of the description of the Neon; and failing to request a charge on theft by taking as a lesser included offense.

"In order to prevail on a claim of ineffective assistance of counsel [Williams] must show that his counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985) (citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)). To meet the first prong of this test, [Williams] must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case. The second prong requires [Williams] to show there is a reasonable probability that, absent counsel's unprofessional errors, the result of the trial would have been different." (Citations and punctuation omitted.) *Brown v. State*, 268 Ga. 354, 357 (4) (490 SE2d 75) (1997).

*Reynolds v. State*, 231 Ga. App. 33, 37 (6) (497 SE2d 580) (1998).

(a) Regarding knowledge of his right to refuse to testify, trial counsel testified that she did discuss this with Williams and that she was concerned about him testifying because he could open the issue of his character. She further testified that she and he made the decision regarding his testifying together. The trial court's conclusions regarding credibility in this instance and his decision on this issue were not clearly erroneous. *Brown v. State*, 225 Ga. App. 49, 52 (1) (483 SE2d 318) (1997).

(b) On May 28, 2000, prior to trial in September, Cooper wrote Williams a letter in which he said Benton told him that "he [Benton] had the gun and he took the money. . . ." Williams contends that trial counsel's failure to find and call Cooper as a witness evidenced ineffective assistance.

Trial counsel had located a Michael Cooper, but was told by Williams he was not the correct one. Additionally, as trial counsel explained, she correctly concluded that the letter "never actually said that Mr. Williams didn't do it." Also, this information was cumulative of the videotape which showed Benton with the gun taking the money, and Williams has failed to demonstrate a reasonable probability that the result of the trial would have been different if Cooper testified.

(c) Williams also contends that trial counsel should have proven at the motion to suppress hearing that the only place the purple Neon information could have originated was from Cain; that Cain did

not have that information; and, therefore, Officer Davis lied. This issue has been mooted by our conclusion in Division 2.

Further, at the motion for new trial hearing, the burden was Williams' to demonstrate that Cain did not provide the information regarding the Neon. *Castell v. State*, 252 Ga. 418, 419 (1) (314 SE2d 210) (1984); *Baker v. State*, 251 Ga. App. 377, 379 (2) (554 SE2d 324) (2001).

(d) Finally, Williams contends trial counsel failed in not requesting a jury charge on theft by taking as a lesser included offense. As trial counsel testified, however, Williams denied any participation in the incident and any such charge would have been inapplicable. *Worthy v. State*, 237 Ga. App. 565, 567 (2) (515 SE2d 869) (1999). Trial counsel's decision was a matter of trial strategy and is not an incident of ineffective assistance. *McKinney v. State*, 251 Ga. App. 896, 900 (2) (555 SE2d 468) (2001).

4. Williams' argument in his fourth enumeration that the trial court erred in failing to give the jury charge on theft by taking fails. *Moore v. State*, 246 Ga. App. 163, 168 (8) (b) (539 SE2d 851) (2000).

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

———

DECIDED FEBRUARY 22, 2002 —

*Maria Murcier-Ashley*, for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Daniel M. Hirsh, Assistant District Attorneys*, for appellee.