## A02A0620. CELESTIN v. THE STATE.
(567 SE2d 82)

BLACKBURN, Chief Judge.

Gerald Claude Celestin appeals his conviction of trafficking in cocaine following a bench trial. He argues that the trial court erred in denying his motion to suppress evidence and that the evidence was insufficient to support his conviction. For the reasons set forth below, we reverse.

1. Celestin first enumerates as error the trial court's denial of his motion to suppress. In addressing Celestin's contention, "we bear in mind that in a ruling on a motion to suppress, a trial court's findings as to disputed facts will be reviewed under a clearly erroneous standard and that the trial court's application of the law to undisputed facts is subject to de novo appellate review." *State v. Ray*.[1]

Viewed in a light most favorable to the verdict, the evidence shows that on the morning of April 25, 1996, Officer Barry Davis and two other narcotics officers from the Richmond County Sheriff's Department went to the Southeastern Stages bus station in Augusta as part of a drug interdiction program called Operation Jet Way. Celestin's bus had just arrived from Miami. As part of this operation, Officer Davis boarded Celestin's bus, identified himself, and advised the passengers of his intention to search for illegal narcotics and weapons with the assistance of a trained canine. The passengers were told that their compliance with the search would be voluntary and that they could exit the bus before the agents brought on the dog to begin the inspection. Davis announced that any passengers who wished to exit the bus were free to do so; Celestin exited the bus, carrying a blue bag.

As Celestin exited the bus, he was stopped by Officer Bolton, who asked Celestin for identification. Celestin produced his Florida driver's license, which the police retained. As Bolton inspected the license, Davis joined them; he again identified himself as a narcotics officer and asked Celestin for permission to search his bag. Without speaking, Celestin stooped down, unzipped the bag, and began taking folded articles of clothing from it, stopping when he got to a pair of boots in the bottom of the bag. When Davis asked Celestin if he could examine the boots, Celestin repacked the articles of clothing, told the officers he needed to leave, and then began walking away.

Celestin walked to a cab; as he was talking to the cabdriver, Davis came up beside him. Davis told the cabdriver that Celestin was not free to leave, waved the cab away, and then again asked Celestin for permission to search his bag. Once again, Celestin stopped, unzip-

---

[1] *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000).

ped his bag, and pulled out items, leaving the boots in the bottom of the bag. When Davis again asked if he could look inside the boots, Celestin put his clothing back into the bag and complained that Davis was harassing him. Celestin also asked that his driver's license, which Bolton still had, be returned to him. Davis shouted to Bolton to bring the license, but at this point Celestin told Davis that they could keep his license and again began walking away.

Davis hurried back to his car, which he had left on the other side of the lot. Bolton and another officer followed Celestin in their patrol car. After a short distance, Celestin broke into a run; the officers left their car in order to pursue on foot. When the officers caught up with Celestin, he stopped, pushed them away, and again tried to flee. He was apprehended after a brief struggle and arrested for simple battery and obstruction of police officers. As the police had no probable cause to stop or search Celestin, he was free to resist their unlawful detention of his person. One is free to resist an illegal arrest. See, e.g., *Evans v. State*.[2]

When Davis joined Celestin and the other officers, he saw Celestin's blue bag on the ground. Davis asked Celestin about the bag, but Celestin denied that the bag was his. On further questioning, he asserted repeatedly that the bag was not his, that he had not gotten off the bus, and that he had never been on the bus. Davis decided to treat the bag as abandoned property. Shortly thereafter, an officer arrived with a canine unit. When the dog alerted on the bag, Davis searched it and found over 19 ounces of a white powdery substance. The substance was later determined to be cocaine.

Celestin moved to suppress the cocaine, arguing at the hearing on the motion to suppress that he had withdrawn his consent to the search of his bag. The trial judge denied the motion, finding that Celestin had abandoned the bag before Davis searched it and that the constitutional protections of the Fourth and Fourteenth Amendments do not apply to property which has been abandoned.

> Under our law, there are three levels of police-citizen encounters. In the first level, police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave.

*State v. Banks*.[3] See also *Terry v. Ohio*.[4] "There is no threshold

---

[2] *Evans v. State*, 198 Ga. App. 551, 552 (2) (402 SE2d 323) (1991).
[3] *State v. Banks*, 223 Ga. App. 838, 839 (479 SE2d 168) (1996).
[4] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment." (Punctuation omitted.) *Barnes v. State.*[5]

Some drug interdiction operations targeting passengers on buses have been found by the United States Supreme Court not to be violative of the Fourth Amendment. In *Florida v. Bostick*,[6] the Supreme Court considered whether, within the meaning of the Fourth Amendment, a person who is a passenger on a bus has been seized when he is approached at random by a police officer, questioned, and asked to consent to a search of his luggage. The Supreme Court noted that the "cases make it clear that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required." (Citation omitted.) Id. at 434 (II). We note that *Bostick* did not involve a situation where the police had specially advised the passengers that their participation was voluntary and that they were free to depart if they wished. Here the police stopped and detained Celestin without probable cause.

Celestin's interaction with the police in this case was a second tier encounter.

> The second tier occurs when the officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. To stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. "An investigatory stop must be justified by some *objective* manifestation that the person stopped is, or is about to be, engaged in criminal activity."

(Citations omitted.) *State v. Banks*, supra at 839-840.

Celestin was free to ignore the questions of the police and walk away. Though he unpacked his bag and showed the contents to the

---

[5] *Barnes v. State*, 228 Ga. App. 44, 45 (491 SE2d 116) (1997).
[6] *Florida v. Bostick*, 501 U. S. 429 (111 SC 2382, 115 LE2d 389) (1991).

police, he repacked his bag and walked away. No consent was given to the police to search his bag. *Conley v. State.*[7] The police, however, still in possession of his driver's license, refused to honor his decision to end contact with them, and continued to question him and seek permission to search his bag. When Officer Davis told the cabdriver that Celestin was not free to leave and waved him away, a *Terry* stop was initiated and Davis, at that point, had to have a particularized and objective basis for suspecting that Celestin was involved in criminal activity. "This demand for specificity in the information upon which police action is predicated is the central teaching of the Supreme Court's Fourth Amendment jurisprudence." (Punctuation omitted.) *Barnes v. State*, supra at 46.

Officer Davis testified at the bench trial that he detained Celestin because of his "suspicious activity on the bus" and because Celestin stopped unpacking his bags when he got down to his boots. Davis's feeling that Celestin was acting in a suspicious way does not amount to a particularized and objective basis for suspecting him of criminal activity. Beyond that, since Celestin was free both to refuse consent to a search of his luggage and also to ignore the police and walk away from them, his decision to do either cannot provide a basis for suspecting him of criminal activity. The police search of the bag after that point was tainted.

Because the stop of Celestin was illegal and in violation of the protection afforded by the Fourth Amendment, the cocaine seized by the police cannot be used as evidence against him. *Wong Sun v. United States.*[8] Celestin's conviction, therefore, must be reversed.

2. Because of our disposition of his first enumeration of error, it is unnecessary to address Celestin's other contentions.

*Judgment reversed. Johnson, P. J., and Miller, J., concur.*

DECIDED JUNE 13, 2002.

*Paul W. David*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[7] *Conley v. State*, 180 Ga. App. 662, 664 (350 SE2d 45) (1986).
[8] *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963).