A03A0183. THE STATE v. HARRIS et al.
(581 SE2d 736)

RUFFIN, Presiding Judge.

Jessie Harris and Alfonso Santollo were charged with trafficking in cocaine and other cocaine-related offenses. The two filed motions to suppress evidence, which the trial court granted. The State appeals the trial court's order, and for reasons that follow, we affirm.

In reviewing a trial court's ruling on a motion to suppress, we construe the evidence most favorably to that court's findings and judgment.[1] We accept the trial court's decision on disputed facts and credibility assessments unless clearly erroneous.[2] "However, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."[3]

The relevant facts demonstrate that on the evening of July 10, 2001, Officer Cole of the DeKalb County Police Department was patrolling near a Motel 6, which was a known drug area. While driving through the motel parking lot, Officer Cole saw Harris standing in a motel breezeway. Upon spotting Officer Cole, Harris turned and walked through the breezeway to the other side of the motel. Officer Cole then drove around the motel, where he saw Harris talking on a cell phone. From the same vantage point, Cole could see Santollo and a third man, Rodriguez, at a Red Roof Inn, a motel across the parking lot from the Motel 6. Either Santollo or Rodriguez was using a cell phone.

According to Officer Cole, he did not suspect any criminal activ-

---

[20] See *Dutton v. State*, 970 P2d 925, 931-935 (Alaska App. 1999).
[1] See *State v. Burns*, 238 Ga. App. 683 (520 SE2d 39) (1999).
[2] See id.
[3] Id.

ity at this time. However, he circled around the Red Roof Inn and returned to the parking lot between the two motels. At this point, Officer Cole saw Santollo drive a Dodge Neon from the Red Roof Inn to the Motel 6 and back into a parking space, after which Santollo and Rodriguez looked in the trunk of the car. Harris began walking toward Santollo and Rodriguez. Officer Cole made another loop around the Red Roof Inn in his squad car. When he returned to the parking lot between the motels, Officer Cole saw the three men together in the breezeway talking. Officer Cole then stopped his squad car and stared at the men, who turned away, "trotted" up the stairs, and went into a motel room.

Officer Cole decided to investigate, and he drove to the front of the Motel 6 and parked his car. As Officer Cole walked through the breezeway, Harris came around a corner, saw Cole, and stopped abruptly. Officer Cole immediately asked Harris what he was doing in order "to investigate to try to find out exactly what [was] going on." Harris responded that he had come from Buffalo, New York, to meet some friends. According to Officer Cole, Harris appeared nervous, was stuttering, and was unable to give coherent answers.

As Officer Cole was questioning Harris, Rodriguez came out of the motel room and saw the two of them in the breezeway. Rodriguez quickly turned and went back into the motel room. At this point, Officer Cole ordered Harris "to take a seat" while Cole called for backup. Officer Cole testified that Harris was not free to leave at this point. Officer Dowdy arrived on the scene and asked Harris for identification. Harris responded that his identification was in the room. According to Officer Cole, he and Officer Dowdy "asked [Harris] to go back to his room so he [could] get [his identification]." Both officers testified that Harris gave them permission to enter the motel room.

At some point, another policeman, Officer Hector, arrived at the scene, and the three officers entered the motel room with Harris. The officers immediately "cleared the room" to make sure no one was hiding, and they patted down Santollo and Rodriguez. Although the officers did not see any contraband, weapons, or any other sign of criminal activity, Officer Cole obtained identification cards from Santollo and Rodriguez, and Harris — who could not find his identification — provided his name and birth date. Officer Cole returned to his squad car to run checks on the men for outstanding warrants.

After Officer Cole left the room, Officer Dowdy continued to question Harris. Because Santollo and Rodriguez were Hispanic, Officer Dowdy had yet another police officer named Toledo come to the motel room in order to translate. Officer Toledo arrived with a fifth police officer, Devoi, who discovered a set of car keys on the dresser. One of the officers asked to whom the keys belonged, and Harris claimed the keys, which were for a Chevrolet Blazer parked in

the motel lot. Officer Dowdy went down to the parking lot to look for Harris' identification inside the Blazer.[4] On the passenger seat, Officer Dowdy saw two shoe boxes, one of which was partially opened and filled with cash. Finding the presence of so much cash suspicious, Officer Dowdy called for a K-9 unit to perform free air searches around the Blazer and Neon.[5] The K-9 unit arrived, and the police dog alerted to both vehicles. The police obtained a search warrant for the two vehicles. Upon execution of the warrant, cocaine was found in the trunk of the Neon. Harris and Santollo were then arrested.

There are at least three tiers of police-citizen encounters: consensual encounters; brief investigatory stops, which require reasonable suspicion; and arrests that must be supported by probable cause.[6] In a first-tier encounter,

> police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment. . . . So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.[7]

During a second-tier encounter, the police

> officer actually conducts a brief investigative *Terry* stop of the citizen. In this level, a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity. To

---

[4] Although Officer Dowdy testified that he obtained Harris' permission to search the truck for the identification, the trial court apparently questioned this testimony.

[5] While Officer Dowdy was in the parking lot, Officers Toledo and Devoi remained in the motel room to question Santollo and Rodriguez. Officer Toledo separately took Santollo and Rodriguez into the bathroom to interview each away from the other. According to Officer Toledo, Rodriguez admitted during the interrogation that cocaine could be found in the trunk of the Dodge Neon. However, the trial court suppressed this statement, finding it was improperly induced with promises of leniency. The State does not challenge this ruling on appeal.

[6] See *Buchanan v. State*, 259 Ga. App. 272, 274 (576 SE2d 556) (2003).

[7] (Citations, punctuation and footnotes omitted.) *Celestin v. State*, 255 Ga. App. 792, 793-794 (1) (567 SE2d 82) (2002).

stop a citizen, the officer must possess more than a subjective, unparticularized suspicion or hunch. The officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion, and the officer must have some basis from which the court can determine that the detention was neither arbitrary nor harassing. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.[8]

Moreover, a second-tier stop "is subject to strict boundaries regarding duration, intent, and scope."[9] Such investigative stop should be brief, "limited in time to that minimally necessary to investigate the allegation invoking suspicion."[10]

The State asserts that Officer Cole's questioning of Harris began as a consensual, first-tier encounter. According to the State, it became a second-tier encounter when Officer Cole gained articulable suspicion based upon Harris' palpable nervousness and Rodriguez's reentering the motel room upon seeing the police officer. However, we disagree that Officer Cole had reasonable, articulable suspicion.

Nervousness in police presence, standing alone, provides no articulable suspicion.[11] And the mere fact that a motel room occupant returns to his room rather than approaching a police officer does not alter the analysis. Indeed, a citizen's ability to walk away from or otherwise avoid a police officer is the touchstone of a first-tier encounter.[12] Thus, such conduct should not provide the basis for elevating the encounter to a second-tier *Terry* stop.[13]

Moreover, the police officers had no basis for detaining and questioning Santollo. Although the State argues that this encounter was consensual, we find this argument unpersuasive. Immediately upon entering the room, the police searched Santollo, and such search generally requires articulable suspicion.[14] Here, the officers lacked suspi-

---

[8] (Punctuation and emphasis omitted.) Id. at 794.

[9] *State v. Swords*, 258 Ga. App. 895, 896 (575 SE2d 751) (2002).

[10] Id.

[11] See *Holmes v. State*, 252 Ga. App. 286, 289 (556 SE2d 189) (2001).

[12] See *Smith v. State*, 245 Ga. App. 613, 614-619 (538 SE2d 517) (2000) (officer lacked articulable suspicion to stop driver who pulled away after being approached by police). Cf. *Harris v. State*, 205 Ga. App. 813, 814 (1) (423 SE2d 723) (1992) (running from officers while in known drug area may give rise to articulable suspicion).

[13] But see id. (headlong flight might give rise to reasonable suspicion).

[14] See *State v. King*, 227 Ga. App. 466, 468 (489 SE2d 361) (1997); *In the Interest of T. J. B.*, 237 Ga. App. 824, 826 (517 SE2d 77) (1999) (physical precedent only). Moreover, Officer Cole actually took Santollo's identification and left the motel room, which undermines the State's contention that Santollo was free to leave.

cion as they had not witnessed any crime or any conduct which might suggest a crime had been committed.[15]

In the alternative, the State argues that the officers had articulable suspicion to detain Harris because he was in a known drug area and trotted to a motel room after seeing Officer Cole in his squad car. Again, however, "trotting" to one's motel room is not the type of headlong flight that gives rise to articulable suspicion.[16] Harris' activity was innocuous at best.[17] Similarly, we do not find Santollo's conduct in moving a car in a motel parking lot and looking in the trunk of the car to be particularly suspicious. Indeed, many motel guests engage in similar conduct. Although Officer Dowdy's discovery of the money arguably gave rise to articulable suspicion, the discovery was tainted by the illegality of Harris' and Santollo's detention.[18] Where, as here, the police had no information that the men were involved in any criminal conduct and the officers saw nothing that would give rise to reasonable suspicion, we find no error in the trial court's suppression of the evidence.[19]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED MAY 5, 2003.

*J. Tom Morgan, District Attorney, Paul A. Shorstein, Assistant District Attorney*, for appellant.
*Xavier C. Dicks, David R. Trainor*, for appellees.

---

[15] See *State v. Stone*, 147 Ga. App. 192, 194 (248 SE2d 228) (1978).
[16] See *Smith*, supra.
[17] See id.
[18] See *Tarwid v. State*, 184 Ga. App. 853, 856 (1) (363 SE2d 63) (1987).
[19] See id.; *State v. Kwiatkowski*, 238 Ga. App. 390, 392-393 (519 SE2d 43) (1999); compare *McGaughey v. State*, 222 Ga. App. 477 (474 SE2d 676) (1996) (after receiving tip regarding drug activity, police approached suspect and received immediate consent to search her).