## A96A1510. THE STATE v. ARMSTRONG.
### (477 SE2d 635)

BEASLEY, Chief Judge.

The trial court granted the motion to suppress evidence in favor of Armstrong and dismissed all charges, and the State appeals.

Officer Fouchia was working an off-duty job in uniform and in a marked police car in the parking lot of a shopping center on Christmas Eve. He heard tires squealing and saw white smoke coming from the rear tires of a pickup truck which bounced as it made a turn in the parking lot. Pedestrian and vehicular traffic were both heavy. The officer observed people walking near the truck and recognized the driver's manner of driving as dangerous to the pedestrian traffic.

He followed and then stopped the truck, and as he approached it, driver Armstrong rolled the window down. The officer smelled marijuana and observed Armstrong concealing a pipe in his hand. After arresting him, the officer advised Armstrong of his implied consent and *Miranda* rights, and Armstrong consented to blood and urine testing. Additional marijuana was found in his pocket after his arrest.

Armstrong was accused of driving under the influence of drugs to the extent that he was a less safe driver, OCGA § 40-6-391 (a) (2), driving with unlawful drugs present in blood or urine, OCGA § 40-6-391 (a) (6), possession of marijuana, OCGA § 16-13-30 (a), and "laying drag," OCGA § 40-6-251.

At the motion to suppress hearing, Officer Fouchia testified that he stopped Armstrong for "laying drag" and that if there had been anyone directly in front of the truck at the time the incident occurred, he would have also charged Armstrong with reckless driving. Armstrong's counsel went through each act in the statute which constitutes "laying drag" and elicited testimony from the officer that Armstrong was not "causing the vehicle to move in a zigzag or circular course or to gyrate or spin around." OCGA § 40-6-251. Fouchia's testimony fell short of showing that Armstrong had violated this provision of the traffic code.

The trial court observed that "[t]here is a popular misconception among the public and law enforcement of what laying drags is. What you witnessed, Officer Fouchia, is not what the legislature says is laying drags. It's not a violation of the law — not a violation of any law for the defendant to do what you witnessed him do." The court

then found, "There can't be articulable suspicion on conduct that's not a crime," and excluded the evidence on the basis that the stop had accordingly been unreasonable under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

1. The evidence at the suppression hearing was uncontroverted, and no question of credibility of witnesses was presented. We thus review the trial court's ruling on the motion to suppress to ensure that there was a substantial basis for it. *State v. McFarland*, 201 Ga. App. 495 (411 SE2d 314) (1991). The trial court's application of the law to the undisputed facts is subject to de novo review. *Darby v. State*, 216 Ga. App. 781 (455 SE2d 850) (1995).

2. When a police officer makes a stop and restrains an individual's freedom to depart, that person is "seized." The Fourth Amendment requires that the seizure be "reasonable" to assure the individual is not " 'subject to the discretion of the official in the field.' [Cits.]" *Delaware v. Prouse*, 440 U. S. 648, 655 (III) (99 SC 1391, 59 LE2d 660) (1979). The reasonableness requirement imposed by the Fourth Amendment strikes "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U. S. 873, 878 (III) (95 SC 2574, 45 LE2d 607) (1975).

A brief investigative stop of a vehicle by a law enforcement officer is considered reasonable if it is "justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." (Citations and punctuation omitted.) *Tarwid v. State*, 184 Ga. App. 853, 854 (363 SE2d 63) (1987). Investigative stops of vehicles, like other *Terry*-type stops, are illegal if based only on an "unparticularized suspicion or hunch." Id. There must be a specific, articulable suspicion which is determined by looking at the totality of the circumstances — "objective observations, information from police reports, the modes or patterns of certain kinds of lawbreakers, and the inferences drawn and deductions made by a trained law enforcement officer. *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981)." *Cheatham v. State*, 204 Ga. App. 483, 484 (1) (419 SE2d 920) (1992).

Even if Armstrong's behavior did not technically violate the "laying drags" statute, the officer nonetheless had reasonable articulable suspicion to stop him. The totality of circumstances in this case consisted of Armstrong driving his truck in a crowded parking lot on Christmas Eve in such a manner as to endanger others' safety. Stopping his conduct was reasonable, whether or not Armstrong was technically "laying drags."

The trial court's declaration that "[t]here can't be articulable suspicion on conduct that's not a crime" is an incomplete statement of the law. While it is true that the officer must reasonably suspect

wrongdoing, and that this suspicion cannot be based on a mere hunch that the individual is "up to something," we have rejected the notion that the police officer must know with certainty that each element of a particular crime could be established: "If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. It is not the officer's function to determine on the spot such matters as, e.g., jurisdiction or the legal niceties in definition of a certain crime, for these are matters for the courts. The question to be decided is whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing." (Citations and punctuation omitted.) *State v. Webb*, 193 Ga. App. 2, 3-4 (386 SE2d 891) (1989).

The situation here is distinguishable from cases in which we have found reasonable articulable suspicion lacking. See, e.g., *State v. Canidate*, 220 Ga. App. 276, 277-278 (469 SE2d 710) (1996) (a "hunch" that someone has sped up and pulled into a parking lot to escape police detection of some wrongdoing); *State v. Jones*, 214 Ga. App. 593 (448 SE2d 496) (1994) (defendant failing to use left turn signal while he was sitting in left-turn-only lane); *State v. Golden*, 210 Ga. App. 800, 801 (437 SE2d 492) (1993) (officer stopped vehicles because he "felt it uncommon for vehicles to be parked in that area in that fashion after dark and also to see the . . . pickup truck come out of a wooded area in a residential area at night"); *Tarwid*, supra (defendants traveling slightly under the speed limit after having received a warning citation for speeding); and *Powell v. State*, 163 Ga. App. 801, 803 (295 SE2d 560) (1982) ("[T]he only thing [defendant] was observed doing which might even be considered suspicious was. walking along a road looking at it").

This episode approximates cases where we have found the officer had an articulable suspicion to make the stop, where the defendant was acquitted of the crime for which the officer stopped him initially, *Jones v. State*, 177 Ga. App. 489 (339 SE2d 766) (1986); where the defendant's attorney elicited testimony from the arresting officer after having him read the applicable Code section, that, according to the letter of the statute, defendant had not in fact violated that provision of the traffic code, *Allenbrand v. State*, 217 Ga. App. 609, 610 (1) (458 SE2d 382) (1995); and where the officer did not cite defendant for the traffic violations which led to the stop. *State v. Wright*, 221 Ga. App. 202 (470 SE2d 916) (1996), and *Hines v. State*, 214 Ga. App. 476 (448 SE2d 226) (1994).

The primary purpose for the exclusionary rule is to deter police

misconduct. *Michigan v. DeFillippo*, 443 U. S. 31, 38 (III), n. 3 (99 SC 2627, 61 LE2d 343) (1979). No purpose of deterrence would be served by suppressing the evidence found in this case, which was the product of a stop prompted by the officer's legitimate concern for public safety. The trial court's order is reversed. There were specific and articulable facts which, together with reasonable inferences based on those facts, justified a limited inquiry. The State must demonstrate some basis from which the court can determine that the detention was not pretextual, arbitrary or harassing, and not based upon mere inclination, caprice, or a "hunch" by law enforcement. See *State v. McFarland*, supra. It did so here.

3. After suppressing all physical evidence, the trial court dismissed the charges. The dismissal is also reversed.

*Judgment reversed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED OCTOBER 28, 1996.

*Gerald N. Blaney, Jr., Solicitor, Allison L. Thatcher, Richard E. Thomas, Assistant Solicitors*, for appellant.

*Frederick P. Meyer, Jr., Michael J. Puglise*, for appellee.