A03A1171. SAYE v. THE STATE.
(587 SE2d 393)

SMITH, Chief Judge.

James Lamar Saye was indicted by a Cherokee County grand jury on two counts of vehicular homicide, one count of driving under the influence, one count of reckless driving, and three counts of violation of the Georgia Controlled Substances Act. On February 14, 2002, Saye entered a negotiated plea of guilty which the trial court accepted after a hearing in which the State's evidence was outlined by the prosecutor and Saye was questioned regarding the facts and his plea of guilty. Before sentencing, on February 25, 2002, Saye withdrew his guilty plea. He also fired his first attorney, and a second attorney was appointed by the trial court.

On March 20, 2002, Saye entered a second plea of guilty to the same charges, and after a second hearing in which the State again summarized the evidence and the trial court questioned Saye, his negotiated plea was accepted and he was sentenced. On September 6, 2002, Saye moved for permission to file an out-of-time motion and also filed an out-of-time motion to withdraw his second guilty plea. The trial court heard his motion to withdraw the plea on the merits and denied it. He appeals, alleging that his second plea counsel was ineffective and that his plea was not entered knowingly, voluntarily, and intelligently. We find no merit in any of these contentions, and we therefore affirm.

1. Saye asserts ineffective assistance of his second plea counsel in three respects: failure to inform him that his guilty plea was entered pursuant to *North Carolina v. Alford,* 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), failure to file a timely motion to withdraw his guilty plea, and failure to investigate and prepare his case. But the record demonstrates that the trial court's decision was supported by some evidence and was not clearly erroneous.

> To show ineffective assistance of counsel, a defendant who pleads guilty must show that his counsel erred and that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. The trial court's findings of fact are subject to a "clearly erroneous" standard of review.

(Citations omitted.) *Johnson v. State,* 260 Ga. App. 897, 899-900 (2) (581 SE2d 407) (2003).

(a) Saye first contends his second plea counsel was ineffective in failing to inform him that he was entering an *Alford* plea or the consequences of such a plea. Saye relies upon *Harpe v. State*, 254 Ga. App. 458 (562 SE2d 521) (2002), in which counsel allegedly told the defendant that an *Alford* plea was "an 'innocent' plea" and "a 'not guilty' plea." Id. at 458, 459. This court nevertheless rejected Harpe's contention that he had been provided ineffective assistance of counsel, noting that the defendant did not enter his pleas "upon the belief that a jury trial would follow." Id. at 459. While the basis for Saye's reliance on *Harpe* is somewhat unclear, he appears to complain that neither his counsel nor the final disposition mentioned the word "*Alford*," even though his signed petition to enter the plea did so a few lines above his signature. While Saye also contends he was not advised of the nature of an *Alford* plea, Saye's second plea counsel testified that he explained the meaning and effect of an *Alford* plea to Saye, even though he did not use the word "*Alford*."

"It is not that the magic words are spoken, but what is said and done irrespective of the magic words." *Messex v. Lynch*, 255 Ga. 208, 210 (336 SE2d 755) (1985). "We have long ago departed that realm of law where runes and sigils supplant reason and substance." *Tuggle v. Tuggle*, 251 Ga. 845, 846 (2) (310 SE2d 224) (1984). The nature of Saye's plea, the reasons for entering it, and the potential consequences were discussed thoroughly and completely at both hearings on his two separate guilty pleas. At the first hearing, the trial court invited Saye to "[t]ell me what happened in this case." Saye responded, "Well, your Honor, I'm responsible for what happened. We was in my truck and I'd been driving the whole night before, you know. I was drugged up and alcoholed [sic] up. I don't remember the time of the accident, but I know I was driving." The court questioned him in detail on the circumstances of the accident, and Saye recalled a few details of events leading up to the collision.

The trial court then asked the State for any additional evidence, and the prosecutor outlined the events leading up to Saye's crossing the centerline of the roadway and colliding with the victims' car, killing them both. The prosecutor stated that the evidence would show Saye's earlier, unsuccessful attempts to purchase beer at two convenience stores in the area and numerous reports of his truck being driven in an erratic manner by a male driver. He noted that Saye's passenger would testify that Saye was driving, that she had bruises on her shoulder and neck indicating that she was in the passenger seat at the time of the collision, and that DNA analysis showed her blood on the passenger side airbag. Blood and urine tests showed the presence of alcohol, Xanax, marijuana, amphetamine, and methamphetamine in Saye's system. Saye himself acknowledged that all

these facts were correct except whether his passenger or someone else had taken Saye's teenage son home before the collision.

The trial court reviewed the elements of each charge with Saye and then asked him if there was "any question about the fact" that he was driving under the influence, driving with reckless disregard, and possessing drugs. After some colloquy Saye responded, "No, sir," to these questions. At that point, the trial court found Saye's pleas to be intelligently and voluntarily entered and allowed him to enter his plea.

At the second plea hearing before the same trial court, Saye reiterated that he could not remember the collision. The trial court responded, "So you have to base that based on what you're told by your lawyer, by [the prosecutor], and by any other evidence that can be stated here for the record." Saye responded, "Right." The prosecutor then summarized the evidence for a second time. The trial court made detailed inquiries about the strength of the State's evidence and challenged it on several points. After again obtaining Saye's account of the night of the incident, the trial court questioned him closely regarding his asserted belief that he was not driving and then asked him, "is there anything, other than just gut reaction and maybe hoping and wishing that you didn't do it, that causes you to believe that you weren't the driver?" Saye responded, "No." The trial court asked Saye why he had withdrawn his previous guilty plea, and Saye responded, "Well, I thought that I might have a better chance with a jury trial." When the trial court pointed out that "that still may be the case," Saye responded, "Well, with the evidence that my lawyer has told me about, I don't think so."

At the hearing on Saye's motion to withdraw his guilty plea, Saye acknowledged that he understood that he was pleading guilty based on the State's evidence, that he could plead guilty even though he had no memory of the collision, and that he did plead guilty because he knew he could do so even if he did not remember committing the act. On cross-examination, Saye agreed with the prosecutor's suggestions that he "made an intelligent decision" with his first counsel as well as with his second counsel, that he was hoping for a lesser sentence on a guilty plea, and that he "knew what all was going on as far [as] how [he was] represented, what the law was and all the facts, rolling the dice, that [he] had the chance to get more; this was a chance to get less."

"*Alford* permits a criminal defendant to plead guilty while claiming to be innocent, where the defendant intelligently concludes that it is in his best interest to enter such a plea, but the plea is one of guilt and may be accepted only if the court determines there is a factual basis for a determination of guilt." (Citation and punctuation omitted.) *Harpe*, supra, 254 Ga. App. at 459-460 (1). As in *Harpe*, the

testimony of the defendant and his plea counsel is in conflict, and the trial court was authorized to accept counsel's account of the advice he gave to Saye. Moreover, as in *Harpe*, Saye clearly understood that his plea was based on the State's evidence and would not result in a jury trial but in a sentence with the possibility of more leniency than a sentence after a jury verdict.

As the trial court observed during the hearing on Saye's motion to withdraw his plea, "[t]his was clearly an *Alford* plea" based on the trial court's request for the State to summarize the evidence and Saye's consistent testimony that he did not remember the collision itself. "[T]he defendant understood entirely what we were doing, whether he knew the nomenclature, *Alford* plea or not, he was pleading guilty based on the strength of the State's case, and that's what he didn't want to face. Rather than in front of a jury, he would rather plead guilty. That was clear at the time. It's clear in retrospect from looking at the transcript now." The trial court's determination that Saye's second plea counsel was not ineffective in explaining the plea and its consequences was not clearly erroneous.

(b) Saye also asserts his former counsel was ineffective in failing to file a timely motion to withdraw his second guilty plea. But Saye was given leave to file an out-of-time motion and it was heard and decided on its merits, as the trial court expressly stated at the hearing and in its order. Therefore any such failure on the part of Saye's former counsel, if error, was harmless, and "harm as well as error must be shown in order to warrant reversal. [Cit.]" *Burchette v. State*, 260 Ga. App. 739, 744 (580 SE2d 609) (2003).

(c) While Saye does not assert a separate enumeration of error, he appears to contend that his second counsel inadequately investigated his case before his plea was entered. He "thought" that his second counsel only met with him twice. But at the hearing on the motion to withdraw Saye's guilty plea, this counsel testified that he met with Saye four times, including the day of the plea, and also met at length with Saye's father, who gave him "a lot of information" and discussed the case in detail with him. He filed numerous motions and interviewed numerous witnesses who identified Saye as the driver of the truck shortly before the collision and who would have testified that he was intoxicated. He also interviewed an EMT who would have testified that Saye admitted both at the scene and later in the ambulance on the way to the hospital that he was driving the truck at the time of the collision. He believed that he was prepared for trial and even though a motion for continuance was pending, he could not say whether he would have reasserted that motion at trial. The trial court's acceptance of the testimony of Saye's second plea counsel in preference to that of Saye was not clearly erroneous.

2. Essentially relying on the same arguments presented in his first enumeration of error, Saye asserts that his plea was not knowingly, intelligently, and voluntarily entered. As noted in Division 1, Saye's contention that he did not understand the nature of his plea or the factual basis for entering it is without merit. Saye consistently acknowledged that he was too intoxicated to recall whether he was the driver of his truck at the time of the collision, but he also acknowledged that the State had shown sufficient physical evidence and eyewitness testimony to obtain a conviction. He repeatedly acknowledged the accuracy of the State's evidence and that based on the evidence his lawyer had told him about he would be convicted at a jury trial. Finally, the trial court reviewed in detail with Saye the terms of his sentence, the fact that he could not withdraw his plea once the sentence had been imposed, and that while he could file a motion to modify his sentence the trial court had given "no suggestion, promise, or even an inkling that I will change your sentence."

> A criminal defendant must personally and intelligently participate in the waiver of the constitutional right to a trial by jury. When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made.

(Citation, punctuation and footnote omitted.) *Gary v. State*, 241 Ga. App. 76, 77 (2) (526 SE2d 148) (1999). "The question of whether a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous." (Citation and punctuation omitted.) *Payne v. State*, 219 Ga. App. 439, 440 (465 SE2d 724) (1995). The record, including Saye's testimony at the hearing on his motion to withdraw his plea, demonstrates that his waiver was knowing and voluntary, and the trial court's decision finding that Saye properly waived a jury trial is not clearly erroneous.

*Judgment affirmed. Ruffin, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 16, 2003.

*Barry W. Bishop, Louis M. Turchiarelli*, for appellant.
*Garry T. Moss, District Attorney*, for appellee.