## A04A1682. DIXON v. THE STATE.
### (609 SE2d 148)

MIKELL, Judge.

We granted Larry Dixon IV's application for discretionary appeal following the revocation of his probation to determine whether the trial court erred in denying his motion to suppress evidence. Because the trial court correctly determined that the officer who stopped Dixon's vehicle had a reasonable, articulable suspicion for doing so, we affirm.

In reviewing the trial court's decision, we accept its credibility determinations unless they are clearly erroneous, while we review de novo the court's application of the law to undisputed facts.[1] Properly viewed, the record shows that on October 18, 1999, Dixon pleaded guilty to possession of cocaine and driving on a suspended license. He was sentenced to five years on the cocaine offense and twelve months on the driving offense, both to be served on probation. On October 6, 2003, the state brought an action against Dixon to revoke his probation, alleging that he had violated its terms by committing the offenses of possession of a firearm by a convicted felon, carrying a concealed weapon, driving under the influence of alcohol and drugs, violating the open container law, and driving with defective equipment. In addition, the state contended that Dixon violated the special condition of his probation that prohibited him from operating a motor

---

[1] Compare *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004), with *Silva v. State*, 278 Ga. 506 (604 SE2d 171) (2004).

vehicle without the court's permission. Dixon filed a motion to suppress, alleging that the traffic stop which led to his arrest was unlawful.

A hearing was held on the motions on December 9, 2003. The defense presented no evidence. The only witness was the arresting officer, Travis Simpson, who testified that on June 14, 2003, he noticed a Dodge Durango missing a foglight. Simpson initiated a traffic stop after the vehicle passed him twice. He testified that he decided to stop the vehicle to check the safety of the driver and the vehicle. Simpson did not have a specific charge in mind at the time. However, based on his police academy training, Simpson believed that any lighting on a vehicle was required to be in proper working order. Simpson next testified that after he stopped Dixon and asked for his license, Dixon replied that he did not have a driver's license. Dixon also told him that he had been drinking Harvey's Bristol Cream. Dixon showed him the bottle, which was about half full. Dixon admitted that he had drunk the other half. At that point, Simpson placed Dixon in custody and read him his implied consent rights as well as *Miranda* warnings. Simpson searched the driver's area and discovered a .40 caliber pistol, which Dixon said belonged to his wife. Dixon also admitted that he was a convicted felon, that he was a regular user of marijuana and cocaine and that he had used cocaine earlier that evening.

On cross-examination, Simpson testified that he stopped the Durango for what he considered to be defective equipment and that he believed a nonworking foglight violated OCGA § 40-8-7, the Code section prohibiting a person from driving a vehicle unless its equipment is in good working order. However, he admitted that the Code did not require a vehicle to have foglights. Upon inquiry by the court, Simpson testified that the stop occurred between 3:15 a.m. and 5:00 a.m. Based on the officer's testimony, the court determined that he had a reasonable, articulable suspicion for stopping the vehicle at 3:15 a.m.; namely, that one of its lights was not in proper working order. Thereafter, the trial court denied Dixon's motion to suppress[2] and revoked his probation.

On appeal, Dixon argues the trial court erred in denying his motion to suppress because the state failed to establish that the arresting officer had a reasonable, articulable suspicion for stopping Dixon's vehicle. Dixon argues that the stop was illegal because he did not violate the law by operating a vehicle with a defective foglight. In

---

[2] In its order, the court determined that Dixon had not waived his Fourth Amendment rights as a special condition of his probation. Compare *Allen v. State*, 258 Ga. 424 (369 SE2d 909) (1988).

this regard, OCGA § 40-8-7 (a) prohibits operation of a vehicle "unless the equipment upon any and every such vehicle is in good working order and adjustment as required in this chapter." OCGA § 40-8-7 (b) (1) and (2) make it a misdemeanor to operate a vehicle which either "is in such unsafe condition as to endanger any person," or "does not contain those parts or is not at all times equipped with such lights and other equipment in proper condition and adjustment as required in this chapter." Subsection (d) authorizes any law enforcement officer to conduct a warrantless inspection of any vehicle "suspected of being operated in violation of this article."

Part 2 of Chapter 8 of Title 40 specifically enumerates the lighting equipment which a vehicle is required to have, and the absence of which will result in a traffic offense. The list for automobiles includes headlights,[3] taillights,[4] reflectors,[5] brake lights, and turn signals.[6] A person who drives a vehicle without the enumerated lighting equipment in proper working order violates OCGA § 40-8-7.[7] Foglights, on the other hand, are not mandatory equipment. OCGA § 40-8-29 (b) provides that "[a]ny motor vehicle *may* be equipped with not to exceed two foglights."[8] Dixon asserts that because it is permissible to drive without foglights, the stop of his vehicle, which was operating with only one foglight, was unreasonable.

This argument misses the mark, as it presupposes that a crime must have been committed for the stop to have been valid.

> If the officer acting in good faith believes that an unlawful act has been committed, his actions are not rendered improper by a later legal determination that the defendant's actions were not a crime according to a technical legal definition or distinction determined to exist in the penal statute. It is not the officer's function to determine on the spot such matters as . . . the legal niceties in [the] definition of a certain crime, for these are matters for the courts. The question to be decided is whether the officer's motives and

---

[3] OCGA § 40-8-22.

[4] OCGA § 40-8-23.

[5] OCGA § 40-8-24.

[6] OCGA § 40-8-25.

[7] See *Nelson v. State*, 224 Ga. App. 623, 624 (5) (481 SE2d 605) (1997) (statute is one of strict criminal liability).

[8] (Emphasis supplied.)

actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing.[9]

In the case sub judice, the officer had a good-faith, reasonable belief, based on his training at the police academy, that all lights found on a vehicle were required to be in good working order, including foglights. It was not the officer's function to determine on the spot at 3:15 a.m. whether a malfunctioning foglight fell within the definition of equipment required to be in proper working order pursuant to OCGA § 40-8-7. The fact that his subsequent research revealed that a vehicle is not required to have foglights did not render the stop invalid. Under the totality of the circumstances, the officer's motives and actions were not arbitrary or harassing. It follows that the trial court did not err in denying Dixon's motion to suppress or in revoking his probation.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 5, 2005.

*John L. Strauss*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Layla V. Hinton, Assistant District Attorney*, for appellee.

---

[9] (Citations omitted.) *McConnell v. State*, 188 Ga. App. 653, 654 (1) (374 SE2d 111) (1988) (physical precedent only). Accord *State v. Hester*, supra at 504; *State v. Hammang*, 249 Ga. App. 811 (549 SE2d 440) (2001); *State v. Webb*, 193 Ga. App. 2, 3-4 (1) (386 SE2d 891) (1989).