A06A1319. COLLIER v. THE STATE.
(639 SE2d 405)

SMITH, Presiding Judge.

Andrew L. Collier was indicted by a DeKalb County grand jury for trafficking in cocaine, possession of cocaine with intent to distribute, and possession of marijuana. After the denial of his motion to suppress and the denial of his application for interlocutory review, Collier consented to a bench trial on the trafficking count with a negotiated recommendation of sentence, based on the testimony elicited in the hearing on the motion to suppress.[1] He was found guilty, and his probation from an earlier conviction was revoked. He appeals, contending the trial court erred in denying his motion to suppress. We disagree and affirm.

We consider three principles when reviewing a trial court's ruling on a motion to suppress:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). Construed in this light, the evidence shows that a police officer responded to a domestic relations call on Quillian Avenue in DeKalb County. En route to the scene, he was informed that the situation had escalated; he therefore activated the patrol car's blue lights "to prevent other vehicles from . . . coming in contact or conflicting with our investigation." After the officer stopped and parked on the street, he saw a vehicle "backing up in the wrong lane of traffic." He observed the vehicle approach him, stop, and then

---

[1] The remaining counts were nol prossed.

begin backing up. The officer was approximately 50 yards away from where the vehicle ultimately pulled into a driveway and stopped.

The officer approached the vehicle in his patrol car, got out and asked the driver, Collier, for his driver's license and insurance card. He informed Collier that he had stopped him for improper backing. The officer then looked into the vehicle and saw in the center console a clear bag containing a white powdery substance that he suspected was powder cocaine. After Collier was arrested and placed in the back of a patrol car, a field test on the substance indicated that it was in fact cocaine. A further search of Collier's vehicle revealed additional cocaine and a small amount of marijuana.

We affirm the trial court's denial of Collier's motion to suppress, for two reasons: First, the officer did not stop Collier but merely approached him after he had pulled into a driveway and stopped his vehicle; and, second, the officer had a reasonable and objective basis to conclude that Collier had committed the traffic offense of improper backing.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

(Citations omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

In this instance, the police officer did not "stop" Collier. It was only after Collier pulled into a driveway and stopped, as defense counsel conceded, that the officer "approached the vehicle" in his patrol car and "made contact with Andrew Collier as he was still seated in his vehicle." On cross-examination, defense counsel characterized this encounter as "preventing him, for all intense [sic] purposes from turning around and going in the other direction," but no evidence in the record indicates that Collier's exit from the driveway was blocked or that he was otherwise prevented from

leaving. The police officer did not protest defense counsel's adroit re-characterization of the encounter, but that was not the officer's testimony. What lawyers say is not evidence, including what they may suggest in cross-examination of a witness. See *Parker v. State*, 248 Ga. App. 748, 749-750 (2) (548 SE2d 634) (2001) (instruction to jury). It appears that Collier voluntarily stopped his vehicle in a driveway and that the police officer then approached his vehicle, with no indication that the officer prevented his departure other than by speaking to him.

"It is well established that an officer's approach to a stopped vehicle and inquiry into the situation are not a stop or seizure but rather clearly fall within the realm of the first type of police-citizen encounter." (Citations and punctuation omitted.) *Carrera v. State*, 261 Ga. App. 832, 834 (584 SE2d 2) (2003). While the officer, counsel, and the trial court referred to the encounter as a "stop," in reviewing an order on a motion to suppress we conduct a de novo review of the application of the law to undisputed facts. "It is not that the magic words are spoken, but what is said and done irrespective of the magic words. We have long ago departed that realm of law where runes and sigils supplant reason and substance." (Citations and punctuation omitted.) *Saye v. State*, 263 Ga. App. 225, 226 (1) (a) (587 SE2d 393) (2003). The facts here demonstrate that the officer did not "stop" Collier but approached him after he had already stopped.

Secondly, the police officer testified on direct examination that he observed Collier's vehicle "backing up in the wrong lane of traffic." The trial court specifically included this fact in its order denying the motion to suppress. Although the officer's testimony was somewhat confusing and contradictory, the trial court is the finder of fact, and we construe the evidence to support its findings and judgment. *Tate*, supra. Moreover, depending on where Collier stopped and reversed course when he saw the officer, he may have backed as much as 50 yards before pulling into a driveway.

OCGA § 40-6-240 (a) provides: "A driver shall not back a vehicle unless such movement can be made with safety and without interfering with other traffic." The facts here constitute some evidence of unsafe backing regardless of whether vehicles other than police cars were in the roadway. The fact that Collier managed to perform this maneuver without actually striking another vehicle does not demand a finding that "this maneuver was made with safety as OCGA § 40-6-240 (a) requires." *Roberson v. State*, 230 Ga. App. 179, 180 (495 SE2d 643) (1998). Even if Collier's behavior did not technically violate the traffic laws, the officer nevertheless had a "reasonable articulable suspicion to stop" Collier under the circumstances presented here, because his backing up on the wrong side of the road for a substantial distance could have endangered others and "[s]topping

his conduct was reasonable." *State v. Armstrong*, 223 Ga. App. 350, 351 (2) (477 SE2d 635) (1996).

> Further, an officer's honest belief that a traffic violation has been committed in his presence, even if ultimately proven incorrect, may nevertheless demonstrate the existence of at least an articulable suspicion and reasonable grounds for the stop. In judging the officer's honest belief, a court should determine whether the officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary or harassing. And, while normal driving that incidentally evades a roadblock does not justify an investigative stop, abnormal or unusual actions taken to avoid a roadblock may give an officer a reasonable suspicion of criminal activity even when the evasive action is not illegal.

(Citations, punctuation and footnotes omitted.) *Jones v. State*, 259 Ga. App. 506, 507 (1) (578 SE2d 165) (2003). In *Richards v. State*, 257 Ga. App. 358-360 (1) (571 SE2d 172) (2002), a driver backed up 50 feet and turned into a side street as soon as he crested a hill and saw a police roadblock. We concluded that, regardless of whether this conduct violated any traffic laws, it was sufficiently suspicious and furtive to provide an articulable suspicion of criminal activity. Id. at 360. While the police officers in this case were not conducting a roadblock but simply answering a call, the presence of multiple police cars in the street with blue lights flashing obviously resembled a roadblock sufficiently to elicit an apparent evasive response from Collier. "No purpose of deterrence would be served by suppressing the evidence found in this case, which was the product of a stop prompted by the officer's legitimate concern for public safety." *Armstrong*, supra, 223 Ga. App. at 353 (2).

*Judgment affirmed. Andrews, P. J., Johnson, P. J., and Bernes, J., concur. Ruffin, C. J., Barnes and Phipps, JJ., dissent.*

PHIPPS, Judge, dissenting.

The evidence in this case does not support the trial court's denial of Collier's motion to suppress. I therefore dissent.

First, the majority accepts the state's argument that the officer did not stop Collier at all and takes the position that Collier "voluntarily stopped his vehicle in a driveway." In fact, the officer testified that shortly before he arrived at the domestic relations call,

> the call was upgraded to a more severe situation. In order to prevent other vehicles from I guess coming in contact or

conflicting with our investigation as far as what was going on at that particular situation, I activated my blue lights so it was plainly clear that my vehicle was in the street and we were conducting an investigation. So any vehicle approaching our area would know to stop in that particular area.

The evidence showed that Collier did just as the officer intended — when he approached the officer's car with its blue lights flashing, he put his vehicle in reverse and pulled into a driveway that was not part of the ongoing investigation. The officer testified that when he saw Collier backing, he pursued him in his patrol car and made contact with him while he was still seated in his vehicle. After asking for his driver's license and registration, the officer "advised [Collier] of why [he] stopped him for improper backing."

This was not merely a consensual first-tier encounter involving no coercion or detention. See *O'Neal v. State*, 273 Ga. App. 688, 690 (616 SE2d 479) (2005). In a first-tier encounter,

police officers may approach citizens, ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, as long as the officers do not detain the citizen or create the impression that the citizen may not leave. . . . So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required.

*State v. Harris*, 261 Ga. App. 119, 121 (581 SE2d 736) (2003) (citation omitted). While utilizing his flashing blue lights, the officer pursued Collier and approached him almost immediately after Collier's car had pulled into the driveway. He then told Collier that he was being stopped for a traffic offense. No reasonable person, after having been pursued by a uniformed officer in a patrol car with blue lights flashing and then told by the officer that he was being stopped for a traffic violation, would have nonetheless felt free to disregard the police and go about his business. This holds true even if the officer's car was not physically blocking the driveway.

Accordingly, the encounter between the officer and Collier was a second-tier investigatory stop. The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of Collier's vehicle here. *United States v. Cortez*, 449 U. S. 411, 417 (101 SC 690, 66 LE2d 621) (1981). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." Id. (citations and footnote omitted).

The majority concludes that the stop was authorized because Collier was backing up in the wrong lane of traffic. However, the evidence as a whole does not show that Collier was backing up in the wrong lane of traffic, and any such finding is clearly erroneous. The officer testified that Collier "was driving down the right side of the road, however he was going the wrong way [because he was] backing up the other way." The officer also testified that Collier was driving in the lane closest to the mailbox, with the mailbox on his right-hand side. The state concedes that Collier was not on the wrong side of the road when he backed up, and suggests that when the trial court stated that Collier was going the wrong way, it meant that he was going against what would be the normal flow of traffic, if there had been any traffic.[2] After considering all of the officer's testimony, it is clear that he meant that Collier was going the wrong way because he was merely backing up instead of moving forward, not that he was traveling in the wrong lane. Merely backing up does not violate OCGA § 40-6-240 (a).

The majority also concludes that the stop was justified because "Collier may have backed up as much as 50 yards before pulling into a driveway." In fact, the only mention of "50 yards" is by Collier's counsel when he is questioning the officer and describes the approximate distance between where the officer initially parked his patrol car and where Collier pulled into the driveway. As the state concedes, there is no evidence as to how far Collier backed before he pulled into a driveway. We could speculate that it is just as likely that Collier backed no more than ten feet as it is that he backed fifty yards, but that would be equally inappropriate. The evidence does not show, and it cannot reasonably be construed to show, that Collier backed for a distance that was unsafe.

The record before us does not show that the officer's stop of Collier was justified because of improper backing. See *State v. Jones*, 214 Ga. App. 593, 594 (448 SE2d 496) (1994) (officer's stop of appellee not justified where officer did not observe him commit any crime before the stop). OCGA § 40-6-240 (a) provides that "[a] driver shall not back a vehicle unless such movement can be made with safety and without interfering with other traffic." There is no evidence that Collier's maneuver was made contrary to the safety of others or that it interfered with other traffic. The officer's mistaken belief that Collier had violated that Code provision was not reasonable. See *Dixon v. State*, 271 Ga. App. 199, 201-202 (609 SE2d 148) (2005)

---

[2] The officer testified that there were no pedestrians or other vehicles, except for an unspecified number of police cars, on the street when Collier performed the maneuver he observed.

(question to be decided is whether officer's motives and actions at the time and under all the circumstances, including the nature of the officer's mistake, if any, were reasonable and not arbitrary and harassing). Although the officer did testify that Collier's actions were consistent with the actions of someone who did not want to make contact with a police officer, his "hunch" that Collier backed up to avoid police detection of wrongdoing is an insufficient basis for an investigatory stop. See *State v. Jones*, supra (officer's "hunch" that lawful U-turn was made to escape police detection of wrongdoing did not justify traffic stop); see also *Raulerson v. State*, 223 Ga. App. 556, 557 (2) (479 SE2d 386) (1996) (trooper's conclusion that defendant turned on dirt road to escape police detection of wrongdoing is insufficient basis for investigative stop). And the majority's inclusion of Collier's probationary status — a fact not before the trial court when it heard the motion to suppress — cannot legitimately support this theory now.

Finally, the majority equates this situation to a motorist attempting to avoid a police roadblock. Such acts have been held to constitute reasonable suspicion of criminal activity, even if the evasive action was not illegal. See *Dale v. State*, 267 Ga. App. 897, 899 (600 SE2d 763) (2004). Cf. *Jorgensen v. State*, 207 Ga. App. 545, 546 (428 SE2d 440) (1993) (officer's intuition that defendant was trying to avoid roadblock was insufficient to justify investigative stop of vehicle). But the two situations are distinguishable. A lawful roadblock stops for some legitimate purpose all vehicles traveling in a particular direction. See generally *Dale*, supra at 898-899. The record here shows that the officer stopped only Collier. Moreover, the officer activated his blue lights to keep people away from his investigation, an investigation that did not involve Collier. Backing up was a legitimate response to the officer's activation of his emergency equipment and, considering the totality of the circumstances, did not constitute a proper basis for an investigatory stop. *United States v. Cortez*, supra.

The state failed to meet its burden of presenting evidence demonstrating a reasonable suspicion of criminal activity. See *Duke v. State*, 257 Ga. App. 609, 610 (571 SE2d 414) (2002). That evidence may have existed, but it was not presented to the trial court. This court cannot legitimately base its decision on sheer speculation about the distance Collier backed, facts pertaining to Collier's probationary status not before the trial court or the arresting officer's "unparticularized suspicion or hunch." See id.

I am authorized to state that Chief Judge Ruffin and Judge Barnes join in this dissent.

*Larry D. Wolfe*, for appellant.

*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.