[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 5, 2008
THOMAS K. KAHN
CLERK

No. 08-10792
Non-Argument Calendar

_____

D. C. Docket No. 07-00122-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHAWN HAMILTON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(November 5, 2008)**

Before BIRCH, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Shawn Hamilton appeals his convictions for possession with intent to

distribute ecstasy and five or more grams of cocaine, possession of a firearm by a felon, and using and carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A), and 21 U.S.C. §§ 841(a)(1), (b)(1). Hamilton contends that (1) the police lacked probable cause to execute the traffic stop which led to his arrest; (2) the subsequent search of his vehicle was illegal; (3) the evidence supporting his conviction for possession with intent to distribute cocaine and ecstasy was insufficient; and (4) the evidence supporting his firearm convictions was likewise insufficient. Hamilton's arguments do not persuade. Accordingly, we AFFIRM.

## I. BACKGROUND

At about 7:37 P.M. on 13 October 2007, Officer Sylvester Brown of the Savannah-Chatham Metropolitan Police Department, and his partner, Officer Judd West, were traveling east on 31st Street when they observed a Mercury Grand Marquis traveling in the opposite direction. R2 at 3-4. West then saw the Mercury make a right turn, proceed northbound for about half of a block, stop, and then head back south again while in reverse. The Mercury continued to back out onto 31st Street and then resumed its westbound travel. Id. at 6-7. There were several parked vehicles and light traffic on 31st Street at the time. Id. at 18. West and Brown executed a traffic stop of the Mercury.

2

The Mercury pulled over and stopped in response to the patrol car's emergency lights and siren. West approached the driver's side of the vehicle while Brown covered the passenger's side. Id. at 7. Hamilton was in the Mercury's driver's seat and Tarik Bentley was in the passenger seat. Id. at 8, 11. There were no other passengers in the vehicle.

West tapped on the driver's side window and instructed Hamilton to roll the window down. Hamilton did not respond but instead began to manipulate something next to his right leg in an apparent attempt to conceal the object. Id. at 8. West again instructed Hamilton to roll down his window. After about five seconds, Hamilton complied. Once the window was rolled down, West immediately smelled the strong odor of burnt marijuana. Brown also smelled the odor from his position on the opposite side of the Mercury. Id. at 9, 31. West asked if Hamilton had been smoking marijuana. Hamilton admitted to smoking some earlier. West then instructed Hamilton to exit the car. Id. at 9.

As Hamilton was getting out of the car, he again attempted to conceal something near his right leg. West responded by grabbing Hamilton's wrist and placing Hamilton's hands on top of the Mercury. Id. at 10. West then asked Hamilton for consent to search the vehicle. Hamilton consented, responding that "[t]here is nothing in here. You can search [it.]" Id. at 21. Hamilton was not

3

handcuffed at that point.

While West spoke with Hamilton, Brown instructed Bentley, Hamilton's passenger, to exit the Mercury as well. Bentley immediately attempted to flee on foot, but Brown apprehended him after a few seconds, handcuffed him and placed him under arrest. During the altercation, a clear bag containing crack cocaine and ecstasy fell from Bentley's waistband. A subsequent patdown of Bentley yielded a 9 millimeter pistol. Id. at 30.

Hearing the commotion on Brown's side of the vehicle, West handcuffed Hamilton and placed him in the patrol car. Id. at 10. West and Brown then searched the Mercury, recovering a .45 caliber semi-automatic pistol that was tucked into a crack on the right side of the driver's seat. Id. at 12. They also found a small amount of marijuana residue on the floorboard between the two front seats. Id. at 25. Hamilton and Bentley were arrested and transported to the local precinct for processing.

Before trial, Hamilton filed a motion to suppress, followed by an amended motion to suppress. R1-15; R1-26. Hamilton claimed that the police lacked probable cause for the initial traffic stop and that the subsequent search of his car was illegal. Consequently, the fruits of that search – the drugs and the pistol – were inadmissible. R1-26 at 2-4. A magistrate judge held an evidentiary hearing

4

after which he recommended that Hamilton's motion to suppress be denied. The district court adopted the magistrate judge's report and recommendation and the case proceeded to trial. R1-36.

At trial, Bentley testified against Hamilton. Bentley acknowledged on direct examination that he hoped to receive a more lenient sentence as a result of his cooperation. R3 at 45. He then stated that he began purchasing drugs from Hamilton in 2006 and that he had, on three previous occasions, purchased a quarter-ounce of powder cocaine from him. Bentley denied ever purchasing crack cocaine or ecstasy from Hamilton. Bentley then testified that just after they were pulled over by the police on 13 October 2007, Hamilton handed him the clear bag of drugs (cocaine and ecstasy) which ultimately fell from Bentley's waistband during his attempt to flee. R3 at 51-52. Bentley also confirmed that the .45 caliber pistol found during the search of the Mercury belonged to Hamilton although Hamilton asked Bentley to claim it as his. R3 at 55. Hamilton was ultimately convicted on all counts and sentenced to 157 months of imprisonment. R1-78 at 1-2.

Hamilton now appeals his convictions. Hamilton contends that (1) the police lacked probable cause to execute the traffic stop which led to his arrest; (2) the subsequent search of his vehicle was illegal; (3) the evidence supporting his

conviction for possession with intent to distribute cocaine and ecstasy was insufficient; and (4) the evidence supporting his firearm convictions was likewise insufficient. We address each argument in turn.

## II. DISCUSSION

A. Probable Cause Argument

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's findings of fact to be true, unless shown to be clearly erroneous, and review the district court's application of the law to those facts de novo. See id. Factual findings extend to the district court's credibility determinations, to which we accord considerable deference. See United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002). Additionally, "all facts are construed in the light most favorable to the prevailing party" on the motion to suppress before the district court. United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000).

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, "and its protections extend to brief investigatory stops of persons or vehicles." United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002). It is well settled, however, that a decision to stop

6

a vehicle is reasonable under the Fourth Amendment when an officer has "probable cause to believe that a traffic violation [has] occurred." United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999); see also United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (holding that "a police officer may stop a vehicle when there is . . . probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations relating to the operation of motor vehicles") (quotation marks and citation omitted). We have held that the standard for determining whether probable cause exists "is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (quotation marks and citation omitted).

Georgia law provides that "[a] driver shall not back a vehicle unless such movement can be made with safety and without interfering with other traffic." O.C.G.A. § 40-6-240(a). This traffic code provision prohibits unsafe backing whether or not the maneuver results in accident or injury. See Collier v. State, 639 S.E.2d 405, 408 (Ga. App. 2006). In this case, the officers stopped Hamilton after observing him reverse his direction of travel by backing his vehicle down a city

7

street for half of a block and then into an intersecting street. Hamilton executed this maneuver at night and on a street with parked cars and light traffic. Given these facts and the magistrate judge's assessment of the officers' testimony as "highly credible," R1-33 at 4, we conclude that probable cause existed for West and Brown to effect the traffic stop.

B. Illegal Search Argument

Hamilton's second argument appears to challenge the jury's findings as to the validity of the search conducted by West and Brown. Because the district court addressed this issue when it ruled on Hamilton's motion to suppress, we consider Hamilton's illegal search argument as a challenge to the district court's denial of his motion to suppress rather than as a challenge to the jury's verdict. As such, we apply the same standard of review as that which we have previously outlined in the context of Hamilton's probable cause argument.

Consensual searches do not violate the Fourth Amendment's general prohibition on warrantless searches. See Schneckloth v. Bustamonte, 412 U.S. 218, 219, 90 S. Ct. 2041, 2043 (1973); United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (holding that a "consensual search is constitutional if it is voluntary"). In this case, the record indicates that Hamilton consented to a search of his vehicle. When asked by West for his consent, Hamilton responded "Yes, sir,

8

you can search, there is nothing in here." R3 at 14. We conclude that because Hamilton consented to the search of his vehicle, the search withstands constitutional scrutiny.

We note that grounds for a warrantless search also existed. Both West and Brown smelled a strong odor of burnt marijuana as soon as Hamilton rolled down his window. We have held that "the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search." United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982). In addition, West witnessed Hamilton attempt to conceal what later turned out to be a .45 caliber pistol in the cushion of the driver's seat and Brown was forced to physically detain Bentley as he attempted to flee. These events would lead any reasonable officer to recognize the development of a potentially dangerous situation. We have long acknowledged that "officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety . . . includ[ing] conducting a protective search of the driver, the passengers, and the vehicle." Purcell, 236 F.3d at 1277 (quotation marks and citations omitted).

C. Sufficiency Argument (Drug Conviction)

Hamilton argues that the evidence was insufficient to support his conviction for possession with intent to distribute crack cocaine and ecstasy because the only

evidence linking the drugs to Hamilton was the uncorroborated testimony of Bentley, his passenger. He contends that Bentley's testimony was not credible (given his stated interest in receiving a lighter sentence) and was inconsistent with his previous statements.

We review a claim of insufficient evidence to convict de novo.[1] See United States v. Nolan, 223 F.3d 1311, 1314 (11th Cir. 2000) (per curiam). We view the evidence in the light most favorable to the government and affirm the conviction if, based on this evidence, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation marks and citation omitted).

In order to obtain a conviction under 21 U.S.C. § 841(a)(1), "the government had to prove three elements: (1) knowledge; (2) possession; and (3) intent to distribute." United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989) (per curiam). Each of these elements may be proven by direct or circumstantial evidence. See id. at 1391-92.

We have held that the "uncorroborated testimony of an accomplice is

---

[1] Hamilton did not file a motion for a judgment of acquittal with the district court. He did, however, timely file a motion for a new trial. Accordingly, Hamilton preserved his insufficient-evidence claim. See United States v. Williams, 144 F.3d 1397, 1401 (11th Cir. 1998). By filing a motion for a new trial, Hamilton preserved his challenge to the sufficiency of the evidence.

sufficient to support a conviction in the Federal Courts if it is not on its face incredible or otherwise insubstantial." United States v. LeQuire, 943 F.2d 1554, 1562 (11th Cir. 1991). Testimony is incredible or insubstantial only if it is "testimony as to facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature." Id. at 1562 (quotation marks and citation omitted) (alteration in the original). In reviewing witness testimony, "[t]he jury gets to make any credibility choices, and we will assume that they made them all in the way that supports the verdict." United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006), cert. denied, 127 S. Ct. 2155 (2007). "It is emphatically not within the province of an appellate court to reweigh the evidence and the credibility of the witnesses at trial." United States v. Hernandez, 141 F.3d 1042, 1052 (11th Cir. 1998).

We conclude that sufficient evidence supports the jury's finding that the government proved each element of § 841 beyond a reasonable doubt. Bentley's testimony was not incredible or insubstantial and from it, a rational trier of fact could conclude that Hamilton had knowledge of and possession of the drugs in question and the intent to distribute them.

D. Sufficiency Argument (Gun Convictions)

Hamilton contends that the evidence was insufficient to support his

11

convictions for knowingly possessing (18 U.S.C. § 922(g)(1)) and carrying a firearm (18 U.S.C. § 924(c)(1)(A)). He argues that he had no actual or constructive knowledge of the .45 caliber pistol found by West and Brown in his vehicle and asserts that the relevant evidence only proves that he was in close proximity to the weapon – not that he owned or possessed the pistol or that he was even aware of its existence.

"Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm." United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004). To establish a violation of § 922(g), the government must prove beyond a reasonable doubt three elements: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce. 18 U.S.C. § 922(g)(1); Wright, 392 F.3d at 1273. Possession can be actual or constructive, and can be shown by circumstantial or direct evidence. Wright, 392 F.3d at 1273. In Wright, we found that there was sufficient evidence that the defendant knowingly possessed the gun, because (1) it was found under the driver's seat, in his car; (2) the defendant was driving his car at the time of his arrest; (3) the gun was next to an open bottle of cold beer; and (4) the defendant resisted arrest. Id. at 1273-74.

Under 18 U.S.C. § 924(c)(1)(A), it is unlawful to use or carry a firearm

12

during or in relation to a drug trafficking crime. To establish a violation of § 924(c)(1), the government must demonstrate beyond a reasonable doubt that the defendant used or carried a firearm during and in relation to a drug trafficking crime. See 18 U.S.C. § 924(c)(1)(A); Smith v. United States, 508 U.S. 223, 227-28, 113 S. Ct. 2050, 2053 (1993). We have found sufficient evidence to support a § 924(c) conviction when a gun belonging to the defendant was found in the glove compartment of a car in which the defendant was a backseat passenger, as the jury could "find that the firearm was being carried by [the defendant] in the vehicle." United States v. Farris, 77 F.3d 391, 395-96 (11th Cir. 1996).

In this case, we conclude that sufficient evidence supports the jury's finding that Hamilton violated § 922(g)(1). Hamilton stipulated to his status as a felon, R3 at 68-69, and does not challenge the gun's interstate nexus on appeal, so the only issue is whether he knowingly possessed a firearm. As in Wright, the gun was found near the driver's seat of the car that the defendant was driving at the time of his arrest. Wright, 392 F.3d at 1273-74. Moreover, West testified that he repeatedly saw Hamilton trying to conceal an object (later confirmed as the .45 caliber pistol in question) before he exited the vehicle, and Bentley testified that Hamilton owned the gun although he asked Bentley to claim it. Given the testimony of West and Bentley, in conjunction with the location in which the pistol

13

was found, a rational trier of fact could conclude that Hamilton knowingly possessed the weapon.

The same evidence supports the jury's conclusion that Hamilton violated § 924(c). The issue here is whether he used or carried a firearm. As in Farris, the defendant, the gun, and the drugs were all located in the same vehicle from which he conducted drug deals. See Farris, 77 F.3d at 395. In this case, Hamilton owned the car, and the gun was found next to the seat in which he was sitting immediately prior to his arrest. In light of this evidence, a rational juror could conclude that Hamilton carried a gun in relation to his drug deals. See Nolan, 223 F.3d at 1314. Accordingly, we conclude that sufficient evidence supports Hamilton's conviction under § 924(c).

## III. CONCLUSION

Hamilton appeals his convictions for possession with intent to distribute ecstasy and five or more grams of cocaine, possession of a firearm by a felon, and using and carrying a firearm during a drug trafficking crime. We conclude that the police had probable cause to execute the traffic stop which led to Hamilton's arrest, the subsequent search of his vehicle was legal, and the evidence was sufficient to support his drug and weapon convictions. Accordingly, the judgment of the district court is **AFFIRMED**.

14