## A09A1314. BAKER v. THE STATE.
### (684 SE2d 427)

SMITH, Presiding Judge.

Edwin James Baker was convicted of trafficking in cocaine. His motion for new trial was denied, and he appeals, complaining in three related enumerations of error that the trial court erred in denying his motion to suppress. We disagree and affirm.

We must follow three principles when reviewing a trial court's order concerning a motion to suppress evidence:

First, the judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and footnote omitted.) *State v. Hester*, 268 Ga. App. 501, 502 (602 SE2d 271) (2004). So viewed, the evidence shows that a Carroll County sheriff's deputy and K-9 officer was patrolling Interstate 20 when he observed a black Chevy Suburban traveling at an unusually slow rate of speed. After clocking the vehicle at 39 miles per hour, below the legal minimum speed, the deputy decided to follow the vehicle. As he followed, the Suburban left the interstate by cutting across the gore instead of following the exit lane, another traffic violation. The vehicle exited onto the state highway and into the turning lane for a truck stop, but when the police car appeared, the driver of the Suburban pulled out of the turning lane back onto the highway. Then the vehicle "abruptly" turned into a restaurant, causing the police car to go on past it when the deputy could not turn in time. Rather than parking or going around the restaurant, the vehicle turned around in the parking lot "which is kind of hard to do," then went back onto the highway and returned to the truck stop. The vehicle "pulled up to the gas pumps and sat there." The driver and passenger got out of the vehicle, and the driver began to walk toward the truck stop while the passenger stood by the vehicle, stretching.

Based on their unusual maneuvers, the deputy concluded that the occupants of the Suburban were trying to avoid him. He never turned on his traffic lights, did not initiate a stop, and did not order the occupants out of the vehicle, but approached the driver as he walked toward the truck stop and asked for his driver's license. Both the driver and passenger seemed "overly nervous" to the deputy, they could not keep still, and would not make eye contact. When the deputy approached the vehicle, he noticed a strong odor of air freshener, which in his experience meant "that odor's trying to cover up another odor inside of the vehicle." Upon checking the driver's and passenger's licenses, the deputy found that both had criminal histories, with the driver having "a criminal and a drug history starting back in 1988." At that time, the deputy asked them for a consent to search, "and they both granted consent without any

problem."[1] Suspicious of the condition of the spare tire under the vehicle, the deputy used a "density meter" which indicated that the tire was full of solid material. After his dog alerted on the tire, the deputy opened the valve stem and smelled the odor of cocaine. Officers found 36 packages of cocaine inside the tire.

> At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief "stops" or "seizures" that require reasonable suspicion; and "arrests," which can only be supported by probable cause. A first-tier encounter never intrudes upon any constitutionally protected interest, since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. On the other hand, a second-tier encounter may violate the Fourth Amendment if the officer briefly "stops" or "seizes" a citizen without an articulable suspicion. Articulable suspicion requires a particularized and objective basis for suspecting that a citizen is involved in criminal activity.

(Citations omitted.) *Brittian v. State*, 257 Ga. App. 729, 731 (572 SE2d 76) (2002).

The trial court did not err in denying Baker's motion to suppress, for two reasons.

First, as the trial court correctly observed, the deputy did not "stop" the vehicle or prevent it from leaving, but merely approached the driver after he had parked his vehicle at the gas pumps and started to walk to the truck stop. "It is well established that an officer's approach to a stopped vehicle and inquiry into the situation are not a stop or seizure but rather clearly fall within the realm of the first type of police-citizen encounter." (Citations and punctuation omitted.) *Collier v. State*, 282 Ga. App. 605, 607 (639 SE2d 405) (2006). Because the deputy's conversations with Baker and his passenger were within the scope of a first-tier encounter and did not rise to the level of a stop, no articulable suspicion was required. *Voyles v. State*, 237 Ga. App. 886, 887 (1) (517 SE2d 113) (1999) (approaching stopped vehicle, asking to see driver's license, and inquiring about suspicious activity do not amount to a stop, and consent to search therefore not tainted by illegal stop). While Baker denied consenting to the search or even being asked for his consent,

---

[1] Baker testified at the hearing on the motion to suppress and denied having been asked for or giving consent to search the vehicle.

the trial court explicitly found his testimony not credible and found credible the officer's testimony that Baker did give consent. This finding is not clearly erroneous, and we must accept it. *Fajardo v. State*, 191 Ga. App. 295, 296 (a) (381 SE2d 560) (1989).[2]

Second, the trial court correctly noted the numerous facts supporting an articulable suspicion that the occupants of the Suburban were engaged in some sort of criminal activity. Not only did the driver commit two traffic offenses, he engaged in a series of unusual maneuvers by appearing to turn into a business, then abruptly moving back onto the highway, turning into another business, then leaving and returning to the first business. The deputy could reasonably infer "that this oddly circuitous route . . . was an attempt by the driver to evade the officer." *Rolfe v. State*, 278 Ga. App. 605, 607 (630 SE2d 438) (2006). He therefore had a "particularized and objective basis for reasonable suspicion to stop the car and investigate. [Cit.]" Id. "[R]egardless of whether this conduct violated any traffic laws, it was sufficiently suspicious and furtive to provide an articulable suspicion of criminal activity. [Cit.]" *Collier*, supra, 282 Ga. App. at 608. Finally, the strong odor of air freshener and the occupants' nervous behavior provided additional articulable suspicion. *Richbow v. State*, 293 Ga. App. 556, 558 (667 SE2d 418) (2008). The trial court did not err in denying the motion to suppress.

*Judgment affirmed. Phipps and Bernes, JJ., concur.*

DECIDED OCTOBER 6, 2009.

*Rickey L. Richardson*, for appellant.

*Peter J. Skandalakis, District Attorney, Vincent J. Faucette, Assistant District Attorney*, for appellee.

---

[2] Baker's contention that he never gave consent apparently forms the basis for his claim that the extensive and lengthy search of the vehicle constituted an illegal second detention. But the trial court determined that consent was given, and the officer testified that both Baker and his companion gave consent immediately after he checked their criminal histories. Therefore, under the facts as determined by the trial court, no improper second detention occurred.